Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 21, 2020

**2020 CO 89**

**No. 19SC354 *Denver Health v. Houchin*—Civil Rights—Employment Practices—Governmental Immunity—Statutory Construction.**

This case principally requires the supreme court to decide whether a division of the court of appeals erred in concluding that a claimant's claims against a governmental entity for compensatory damages under the Colorado Anti-Discrimination Act ("CADA"), section 24-34-405, C.R.S. (2020), were barred by operation of the Colorado Governmental Immunity Act ("CGIA"), section 24-10-106, C.R.S. (2020), but that his equitable claims under CADA could proceed.

For the reasons discussed in *Elder v. Williams*, 2020 CO 88, __ P.3d __, which is also being announced today, the court concludes that (1) neither claims for compensatory relief nor claims for equitable relief against a governmental entity under section 24-34-405 of CADA lie in tort or could lie in tort, and thus neither of such categories of claims are barred by the CGIA; and (2) "the state," as that term is used in subsection 24-34-405(8)(g), C.R.S. (2020), includes political subdivisions of the state.

Accordingly, the court reverses the judgment of the division below and remands this case for further proceedings consistent with this opinion.

**2020 CO 89**

**Supreme Court Case No. 19SC354**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA2046

**Petitioner/Cross-Respondent:**

Denver Health and Hospital Authority,

v.

**Respondent/Cross-Petitioner:**

Brent M. Houchin.

**Judgment Reversed**
*en banc*
December 21, 2020

**Attorneys for Petitioner/Cross-Respondent:**
Fairfield and Woods, P.C.
Brent T. Johnson
        *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
EEO Legal Solutions LLC
Merrily Archer
        *Denver, Colorado*

**Attorneys for Amici Curiae Colorado Plaintiff Employment Lawyers
Association and Colorado Lesbian Gay Bisexual Transgender Bar Association:**
Cornish & Dell'Olio, P.C.
Ian D. Kalmanowitz

Bradley J. Sherman
*Colorado Springs, Colorado*

**Attorneys for Amicus Curiae La Plata County:**
Asimakis D. Iatridis, LLC
Maki Iatridis
*Boulder, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE BOATRIGHT** join in the dissent.

¶1    We granted certiorari principally to review the court of appeals division's conclusions that Brent M. Houchin's claims for compensatory damages under the Colorado Anti-Discrimination Act ("CADA"), section 24-34-405, C.R.S. (2020), were barred by operation of the Colorado Governmental Immunity Act ("CGIA"), section 24-10-106, C.R.S. (2020), but that his equitable claims under CADA could proceed.[1]

¶2    For the reasons discussed in *Elder v. Williams*, 2020 CO 88, __ P.3d __, which we are also announcing today, we conclude that (1) neither claims for

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether, in light of this court's decision in *City of Colorado Springs v. Conners*, 993 P.2d 1167 (Colo. 2000), the Colorado Governmental Immunity Act bars an employee's claim seeking compensatory relief against a governmental entity under section 24-34-405, C.R.S. (2019) of the Colorado Anti-Discrimination Act.

2. Whether the Colorado Governmental Immunity Act allows a claim to proceed with respect to equitable remedies even if it bars the same claim with respect to legal remedies.

3. Whether a claim "against the state" for purposes of section 24-34-405(8)(g), C.R.S. (2019), includes a claim against a political subdivision of the state.

4. Whether the court of appeals' interpretation of section 24-34-405, C.R.S. (2019), deprives public servants working for a political subdivision of the state of equal protection guarantees under the Colorado and United States Constitutions.

3

compensatory relief nor claims for equitable relief against a governmental entity under section 24-34-405 of CADA lie in tort or could lie in tort, and thus neither of such categories of claims are barred by the CGIA; (2) "the state," as that term is used in subsection 24-34-405(8)(g), includes political subdivisions of the state; and (3) in light of the foregoing, we need not reach Houchin's contention that the division majority's interpretation of subsection 24-34-405(8)(g) deprives employees of the state's political subdivisions of equal protection guarantees under the state and federal constitutions.

¶3 Accordingly, we reverse the judgment of the division below and remand this case for further proceedings consistent with this opinion.[2]

## I. Facts and Procedural History

¶4 Because this case arises from an order dismissing Houchin's claims, for present purposes, we take the facts principally from the allegations of Houchin's complaint.

¶5 In 2012, the Denver Health and Hospital Authority hired Houchin as an Employee Relations Specialist and promoted him several years later to Employee

---

[2] We note that, although Justice Samour initially indicated that he would not be participating in this case, he subsequently concluded that he is able to do so, and he therefore has participated fully in the determination of this matter.

Relations Manager. Throughout Houchin's time at Denver Health, his supervisor consistently rated his performance as "successful" and "exceptional."

¶6 The employee relations team that Houchin oversaw at Denver Health was responsible for, among other things, ensuring compliance with all applicable laws and internal employee relations policies, reviewing disciplinary and termination decisions to ensure legal compliance, and monitoring and updating all employee relations policies. In addition, Denver Health's Drug and Alcohol-Free Workplace Policy required Houchin to take immediate action, including the imposition of "investigative leave," based on reasonable suspicion of employee violations.

¶7 As pertinent here, in an employee relations matter concerning the suspected diversion of controlled substances, a former in-house lawyer for Denver Health advised that using an employee's medical records from off-duty medical care in connection with an internal investigation would violate the privacy requirements of the Health Insurance Portability and Accountability Act ("HIPAA"). Houchin objected to this interpretation of HIPAA because he (1) felt that it prevented him from investigating other suspected employee diversions of controlled substances and (2) believed that HIPAA permitted the use of such employee information to detect health care fraud and abuse.

¶8 At some point thereafter, Tim Hansen joined Denver Health as Interim Chief Human Resources Officer. Shortly after his arrival, Hansen invited Houchin and

5

another person to his office for the purpose of getting to know his leadership team better. During the course of this meeting, Hansen shared personal information about his family, and Houchin responded with personal information and anecdotes about his husband and their lives together. According to Houchin, upon hearing this, Hansen's countenance registered an expression of disgust, and he quickly redirected the conversation back to himself and his family. In addition, Houchin perceived that in subsequent interactions, Hansen began treating him with noticeable disrespect, declining to greet or make eye contact with him, excluding him from discussions pertinent to his position, and publicly criticizing him as overpaid.

¶9 A few weeks later, Houchin became involved in an employee relations issue concerning suspected methadone diversion by a supervisor at Denver Health's opioid addiction treatment center. In accordance with Denver Health policy, Houchin recommended that the supervisor in question be placed on investigative leave. According to Houchin, Hansen agreed with this course of action and directed Houchin to proceed to implement it, which Houchin did.

¶10 The next week, Houchin attended a meeting in which the above-referenced in-house counsel and others discussed an alleged violation of the supervisor's HIPAA rights in connection with the foregoing investigation. Houchin reiterated his disagreement with this interpretation of HIPAA.

6

¶11 Shortly after this meeting, Hansen summoned Houchin to his office and, apparently for the first time, expressed concerns regarding Houchin's decision to recommend that the supervisor be placed on investigative leave (Hansen denied having directed Houchin to implement this course of action). Houchin suspected that he was being set up for termination, but he requested coaching and further feedback to address any concerns and to improve his performance, notwithstanding the fact that he had never previously been disciplined or counseled relating to his employment at Denver Health.

¶12 A week later, Hansen terminated Houchin's employment, purportedly based on two alleged HIPAA violations. Following his termination, Houchin appears to have commenced Denver Health's "Concern Resolution" process to address what he believed to be the discriminatory circumstances of his termination. He also applied for unemployment benefits, but those benefits were ultimately denied, due, in his view, to false information submitted by Denver Health regarding the reasons for his termination.

¶13 Houchin then filed a Charge of Discrimination with the Colorado Civil Rights Division, alleging discrimination based on his sexual orientation and retaliation for using Denver Health's "Concern Resolution" process to address such discrimination. The Civil Rights Division ultimately issued a Notice of Right to Sue, and Houchin filed a complaint against Denver Health and Hansen in the

Denver District Court, alleging claims of, among other things, discrimination based on sexual orientation and unlawful retaliation under CADA. Houchin demanded judgment in amounts to be determined at trial, including back pay, front pay, and compensatory damages.

¶14 Denver Health subsequently moved to dismiss Houchin's complaint, arguing, among other things, that Houchin's discrimination and retaliation claims under CADA lie in tort and are therefore barred by the CGIA. Specifically, Denver Health argued that *City of Colorado Springs v. Conners*, 993 P.2d 1167 (Colo. 2000), which had concluded that CADA claims were not subject to the CGIA, was inapposite because that case turned on the limited equitable remedies then available under CADA's predecessor statute. In Denver Health's view, the 2013 amendments to CADA, which for the first time authorized, among other things, front pay and compensatory and punitive damages, added tort remedies to CADA such that CADA claims like those that Houchin was asserting here were now tortious in nature and thus barred by the CGIA.

¶15 The district court ultimately disagreed with Denver Health, concluding in a detailed and thoughtful order that Houchin's CADA claims were not barred by the CGIA. The court reasoned that CADA primarily provides equitable relief to claimants who experience discrimination and that the remaining forms of relief under CADA, including those providing monetary damages to a claimant, were

8

merely incidental to CADA's greater purpose of eliminating workplace discrimination.

¶16 Denver Health appealed, and in a split, published decision, a division of the court of appeals affirmed in part and reversed in part. *Houchin v. Denver Health & Hosp. Auth.*, 2019 COA 50M, __ P.3d __. As pertinent here, the division majority began its analysis with a lengthy discussion of this court's decision in *Conners*. *Id.* at ¶¶ 18–19. The majority observed that the plaintiff in *Conners* had sought reinstatement, back pay, and other equitable relief under the predecessor statute to CADA. *Id.* at ¶ 19. In the majority's view, it was the equitable and non-compensatory nature of this relief that had led this court to conclude that such claims were not subject to the CGIA. *Id.*

¶17 The division majority then proceeded to distinguish *Conners* from the present case, noting that here, Houchin was seeking compensatory damages, including back pay, front pay, and pecuniary and non-pecuniary compensatory damages, as well as other equitable relief. *Id.* at ¶ 20. In the majority's view, under *Conners*'s plain language, Houchin's damages claims sought compensatory relief for personal injuries suffered as a consequence of prohibited conduct and were therefore barred by the CGIA. *Id.* at ¶ 21.

¶18 In so concluding, the majority recognized the anomalous consequences of its own analysis, and in particular the fact that Houchin's claims for certain

9

equitable relief were not barred by the CGIA while his claims seeking legal remedies were. *Id.* Although the division opined that this result did not seem logical or equitable, it viewed the result as mandated by *Conners. Id.*

¶19 The division found further support for its conclusion in subsection 24-34-405(8)(g), which exempts from the CGIA claims against "the state" for compensatory damages under CADA. *Id.* at ¶ 22. In the division's view, "the state" did not include political subdivisions like Denver Health, and thus Houchin's compensatory damages claims against Denver Health were subject to the CGIA. *Id.* Notably, the division majority saw this conclusion, too, as anomalous, illogical, and inequitable, because such an interpretation effectively exempted thousands of state employees from the CGIA's limitations while subjecting thousands of employees of political subdivisions to such limitations. *Id.* at ¶ 23. The majority, however, felt constrained by its interpretation of the statutory text. *Id.*

¶20 Judge Berger dissented in pertinent part because he did not agree that the CGIA bars a claimant from pursuing the legal remedies authorized by the 2013 CADA amendments. *Houchin v. Denver Health & Hosp. Auth.*, 2019 CO 50M, ¶ 28, __ P.3d __ (Berger, J., concurring in part and dissenting in part). In Judge Berger's view, CADA claims are not designed primarily to compensate individual claimants but rather seek to fulfill the government's basic responsibility to redress

10

discriminatory employment practices. *Id.* at ¶ 41. Accordingly, irrespective of the equitable or legal nature of the remedies authorized by CADA, CADA claims are not claims that lie or could lie in tort. *Id.* at ¶ 48.

¶21 Judge Berger was not persuaded otherwise by the majority's analysis of section 24-34-405(8)(g). *Id.* at ¶¶ 49–57. Judge Berger stated that it is "nearly inconceivable" that the legislature would have intended to expand broadly CADA's available remedies while at the same time denying those remedies to a multitude of public employees. *Id.* at ¶ 56. Moreover, Judge Berger believed that if "the state," as that term is used in subsection 24-34-405(8)(g), includes only the state of Colorado and not political subdivisions, then that statute would violate federal and state equal protection guarantees because it would leave every employee of the state's political subdivisions without legal remedies under CADA while at the same time affording such remedies to those employees' counterparts who work directly for the state. *Id.* at ¶ 58.

¶22 Denver Health petitioned this court for certiorari, Houchin cross-petitioned, and we granted both petitions.

## II. Analysis

¶23 As noted above, we granted certiorari in this case to consider whether (1) the CGIA bars claims for either compensatory or equitable relief under CADA; (2) "the state," as that term is used in subsection 24-34-405(8)(g), includes political

11

subdivisions of the state; and (3) the division's interpretation of subsection 24-34-405(8)(g) deprived employees of the state's political subdivisions of equal protection guarantees under the federal and state constitutions.

¶24 In *Elder*, which we are also announcing today, we address the first two of these questions at length. *Elder*, ¶¶ 19–52. As to the first, we concluded that claims for compensatory and equitable relief under CADA do not and could not lie in tort and therefore are not barred by the CGIA. *Id.* at ¶¶ 19–37, 51. As to the second, we concluded that "the state," as used in subsection 24-34-405(8)(g), includes both the state of Colorado and any state agency or political subdivision. *Id.* at ¶¶ 38–48.

¶25 For the reasons described in detail in *Elder*, we reach the same conclusions here. Specifically, we conclude that claims against governmental entities seeking compensatory and equitable relief under section 24-34-405 of CADA do not and could not lie in tort and therefore are not barred by the CGIA. In addition, we conclude that claims against "the state" for purposes of subsection 24-34-405(8)(g) include claims against political subdivisions of the state.

¶26 In light of our foregoing determinations, we need not reach the question of whether the division majority's interpretation of subsection 24-34-405(8)(g) deprives employees of the state's political subdivisions of equal protection guarantees under the federal and state constitutions.

12

## III. Conclusion

¶27 For these reasons, we conclude that the division below erred in determining that Houchin's claims for compensatory damages were barred by the CGIA and that "the state," as that term is used in subsection 24-34-405(8)(g), encompasses only the state of Colorado and not political subdivisions of the state. Accordingly, we reverse the division's judgment and remand this case for further proceedings consistent with this opinion.

**JUSTICE MÁRQUEZ** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE BOATRIGHT** join in the dissent.

JUSTICE MÁRQUEZ, dissenting.

¶28    I disagree with the majority opinion in this case largely for the same reasons that I articulate in my dissent in today's companion case, *Elder v. Williams*, 2020 CO 88, ¶¶ 55–85, __ P.3d __ (Márquez, J., dissenting).   Notwithstanding the societal benefits of the Colorado Anti-Discrimination Act, §§ 24-34-401 to -406, C.R.S. (2020) ("CADA"), claims for injury brought pursuant to the act "could lie in tort," and thus fall within the broad ambit of the Colorado Governmental Immunity Act, §§ 24-10-101 to -120, C.R.S. (2020) ("CGIA").   This is true for both legal and equitable claims; the "could lie in tort" inquiry centers on "[t]he nature of the injury alleged—not the relief requested."   *Open Door Ministries v. Lipschuetz*, 2016 CO 37M, ¶ 16, 373 P.3d 575, 579.   Such claims are barred under the CGIA unless immunity has been waived, and the legislature has not waived governmental immunity for CADA claims brought against political subdivisions. Accordingly, Houchin's claims against Denver Health are barred under section 24-10-106(1), C.R.S. (2020).

¶29    This case does, however, raise one issue not discussed in *Elder*.   Houchin argues that to interpret CADA as waiving immunity for claims brought against the state, but not political subdivisions, violates equal protection.   I disagree.

¶30    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction

1

the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Colorado Constitution contains a similar guarantee. *See* Colo. Const. art. II, § 25; *Dean v. People*, 2016 CO 14, ¶ 11, 366 P.3d 593, 596.

¶31 When assessing an equal protection claim, the level of scrutiny applied to a given statute "varies with the type of classification utilized and the nature of the right affected." *Indus. Claim Appeals Off. v. Romero*, 912 P.2d 62, 66 (Colo. 1996). Rational basis review, the most relaxed standard, applies when no traditionally suspect class is present, no fundamental right is at issue, and no other classification warrants review under a heightened level of scrutiny. *See People v. Diaz*, 2015 CO 28, ¶ 25, 347 P.3d 621, 627. To overturn a statute subject to rational basis review, a challenger must prove beyond a reasonable doubt that the statute's classification bears no rational relationship to a legitimate governmental objective, or that the classification is otherwise unreasonable, arbitrary, or capricious. *Id.*

¶32 Any distinction made in CADA between employees of the state and employees of political subdivisions does not implicate any suspect classes. Rational basis is thus the applicable standard of review. And the disparate treatment of state employees and political subdivision employees in CADA clears the low bar of rational basis scrutiny because it serves the legitimate governmental objective of protecting the public fisc.

¶33 One of the primary purposes of the CGIA is to create "limitations on the liability of public entities . . . necessary in order to protect the taxpayers against excessive fiscal burdens." § 24-10-102, C.R.S. (2020); *see also City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 19, 418 P.3d 489, 496; *Ceja v. Lemire*, 154 P.3d 1064, 1067 (Colo. 2007). The selective waiver of immunity for CADA claims found in section 24-34-405(8)(g), C.R.S. (2020), is rationally related to this legitimate governmental objective because it protects the smaller and often more fragile budgets of political subdivisions, which may not be able to absorb the costs of litigating CADA claims.

¶34 This understanding of the selective waiver of immunity in section 24-34-405(8)(g) is bolstered by the fact that the 2013 amendments to CADA added a provision to the state risk management fund to account for damages claims that may be filed against the state, but not against political subdivisions. *See* ch. 168, sec. 2, § 24-30-1510(3)(a), 2013 Colo. Sess. Laws 549, 554 (allowing expenditures out of the risk management fund to pay liability claims and expenses related to "claims for compensatory damages against the state, its officials, or its employees pursuant to section 24-34-405"). While the state was able to budget for liability arising from CADA claims, many smaller political subdivisions likely cannot, and limiting their liability from such claims is a legitimate governmental purpose that satisfies rational basis scrutiny.

3

¶35 Extending compensatory damages remedies under CADA for employees of the state while declining to do the same for employees of political subdivisions may seem unwise or unfair. But dissatisfaction with the policy choices made by the General Assembly "does not entitle us to overrule the legislature's decision absent a firm conviction that the decision is irrational." *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 894 (Colo. 2002). Given the legitimate governmental objective that may be served by limiting political subdivisions' liability, I cannot say that section 24-34-405(8)(g) is wholly irrational. It thus satisfies rational basis review.

¶36 Accordingly, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE COATS and JUSTICE BOATRIGHT join in this dissent.

4