Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 21, 2020

**2020 CO 88**

**No. 19SC1009** *Elder v. Williams*—Civil Rights—Employment Practices—
**Governmental Immunity—Statutory Construction.**

This case principally requires the supreme court to decide whether claims
against a governmental entity for compensatory relief under the Colorado
Anti-Discrimination Act ("CADA"), section 24-34-405, C.R.S. (2020), are barred by
operation of the Colorado Governmental Immunity Act ("CGIA"), section
24-10-106, C.R.S. (2020).  The court is also asked to decide whether subsection
24-34-405(8)(g) of CADA, which allows for compensatory damages against "the
state," should be read to include political subdivisions of the state of Colorado and
whether front pay is compensatory in nature, lies in tort, and is therefore barred
by the CGIA.

The court now concludes that (1) claims for compensatory relief under
CADA are not claims for "injuries which lie in tort or could lie in tort" for purposes
of the CGIA and therefore public entities are not immune from CADA claims
under the CGIA; (2) "the state," as used in subsection 24-34-405(8)(g), includes

political subdivisions of the state and thus political subdivisions are not immune from claims for compensatory damages based on intentional unfair or discriminatory employment practices; and (3) front pay is equitable and not compensatory in nature under CADA, and age discrimination and retaliation claims seeking front pay do not lie and could not lie in tort for CGIA purposes.

The court therefore affirms the judgment of the division below.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 88

**Supreme Court Case No. 19SC1009**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA1987

**Petitioners:**

Bill Elder, as Sheriff of El Paso County, Colorado; and
El Paso County Sheriff's Office,

v.

**Respondent:**

Timothy Williams.

## Judgment Affirmed
*en banc*
December 21, 2020

**Attorney for Petitioners:**
Bryan E. Schmid, Senior Assistant County Attorney
  *Colorado Springs, Colorado*

**Attorneys for Respondent:**
Livelihood Law, LLC
Rachel E. Ellis
Euell B. Thomas
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Plaintiff Employment Lawyers Association:**
Cornish & Dell'Olio, P.C.

Ian D. Kalmanowitz
Bradley J. Sherman
*Colorado Springs, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE BOATRIGHT** join in the dissent.

¶1 This case requires us to address the interplay between two statutes—the Colorado Anti-Discrimination Act ("CADA"), section 24-34-405, C.R.S. (2020), and the Colorado Governmental Immunity Act ("CGIA"), section 24-10-106, C.R.S. (2020)—each of which serves substantial public policy objectives. In particular, we must resolve three issues of apparent first impression for this court. First, we must decide whether claims against a governmental entity for compensatory relief under CADA are barred by operation of the CGIA. This, in turn, requires us to determine whether CADA claims for compensatory relief "lie in tort or could lie in tort" for purposes of the CGIA because if they do, then governmental entities would be immune under the CGIA from such claims. Second, we must decide whether subsection 24-34-405(8)(g) of CADA, which allows for compensatory damages against "the state," should be read to include political subdivisions of the state of Colorado. And finally, we must decide whether front pay is compensatory in nature, lies in tort, and is therefore barred by the CGIA.[1]

_____

[1] Specifically, we granted certiorari to review the following issues:

1. Whether the Colorado Governmental Immunity Act bars an employee's claim seeking compensatory relief against a governmental entity under section 24-34-405, C.R.S. (2019) of the Colorado Anti-Discrimination Act.

2. Whether section 24-34-405(8)(g), C.R.S. (2019), exempts public sector employers that are a political subdivision, commission,

3

¶2    We now conclude that (1) claims for compensatory relief under CADA are not claims for "injuries which lie in tort or could lie in tort" for purposes of the CGIA and therefore public entities are not immune from CADA claims under the CGIA; (2) "the state," as used in subsection 24-34-405(8)(g), includes political subdivisions of the state and thus political subdivisions are not immune from claims for compensatory damages based on intentional unfair or discriminatory employment practices; and (3) front pay is equitable and not compensatory in nature under CADA, and age discrimination and retaliation claims seeking front pay do not lie and could not lie in tort for CGIA purposes.

¶3    Accordingly, we affirm the judgment of the division below.

---

department, institution, or school district of the state from compensatory damages for an intentional unfair or discriminatory employment practice under the Colorado Governmental Immunity Act, §§ 24-10-101 to -120, C.R.S. (2019).

3. Whether front pay damages for claims that sound in tort are compensatory in nature and therefore excluded from age discrimination claims pursuant to section 24-34-405(3)(g), C.R.S. (2019), and retaliation claims pursuant to section 24-34-405(8)(g), C.R.S. (2019).

4

## I. Facts and Procedural History

¶4    Because the matter before us arises from an order on a motion to dismiss Timothy Williams's claims, for purposes here, we take the facts from the allegations of Williams's complaint.

¶5    Williams began working at the El Paso County Sheriff's Office in 2002 and, after multiple promotions over the course of his career, reached the rank of lieutenant.  In March 2016, Sheriff Bill Elder ordered a mandatory survey requesting, among other things, retirement eligibility dates from all employees. Williams, who then would have been eligible for full retirement benefits on June 1, 2018, completed this survey and reported that he expected to retire within the next five years.

¶6    Thereafter, Williams was assigned to a team that conducted investigations into alleged misconduct by personnel in his office.  Apparently, Sheriff Elder was unhappy with Williams's investigation and the sanctions that Williams recommended, and he confronted Williams in a meeting about it.  In this same meeting, Sheriff Elder went on to criticize Williams's job performance and indicated that Williams should be concerned about his job security.  Then, several days later, Sheriff Elder held a lengthy lieutenants' meeting, at which he demanded that all employees, including Williams, "step up or step out" and

stated, "[I]f you can't cut it then check out." Sheriff Elder allegedly looked at Williams when he made this last statement.

¶7 A few days later, Sheriff Elder demoted Williams to the rank of senior deputy, a significant change in rank, pay, and duties that resulted in substantial adverse retirement benefit consequences for Williams. To avoid these consequences, Williams retired the following day, ultimately to be replaced by a younger and purportedly less qualified employee.

¶8 Based on the foregoing events, Williams filed age discrimination and retaliation charges against the El Paso County Sheriff's Office with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission (for convenience, we will refer to Sheriff Elder and his office collectively as the "Sheriff's Office").

¶9 While these discrimination charges were pending, the Sheriff's Office received and responded to a Colorado Open Records Act request for certain documents. In its response, the Sheriff's Office stated that Williams had been responsible for the requested documents but when he retired, he had removed items from his office and the documents in question could not be located. Williams claimed that this response, which was publicly available, was false and amounted to a public shaming for Williams's having filed discrimination charges against the Sheriff's Office.

6

¶10 The Colorado Civil Rights Division ultimately issued a Notice of Right to Sue, and Williams filed a complaint against the Sheriff's Office in the El Paso County District Court, alleging claims of age discrimination and retaliation under CADA, section 24-34-402, C.R.S. (2020). In his complaint, Williams demanded judgment for any and all damages permissible by law, including, as pertinent here, front pay and compensatory damages.

¶11 The Sheriff's Office moved to dismiss, arguing, among other things, that Williams's claims for front pay and compensatory damages under CADA lie in tort and therefore are barred by the CGIA. Specifically, the Sheriff's Office argued that although prior case law from this court had concluded that CADA claims were not subject to the CGIA, this case law was announced before the General Assembly amended CADA to include front pay and compensatory damages and was therefore inapposite. Instead, the Sheriff's Office contended that because front pay and compensatory damages claims arise out of conduct that is either tortious in nature or that constitutes the breach of a duty recognized in tort law, and because such claims seek relief in the form of compensation for injury, these claims lie in tort or could lie in tort for CGIA purposes and are therefore barred. The Sheriff's Office further argued that any claim for compensatory damages associated with Williams's alleged age discrimination claim must be dismissed under the plain language of subsection 24-34-405(3)(g), which limits a plaintiff's

7

recovery for age discrimination claims to equitable relief under CADA and to the relief prescribed by federal law.

¶12 The district court ordered supplemental briefing on whether CADA's more recently available remedies for front pay and compensatory damages lie in tort and thus are barred under the CGIA. Williams responded that (1) front pay is an equitable remedy under both the plain language of subsection 24-34-405(2) and federal case law interpreting Title VII and (2) when reading CADA's remedies provisions as a whole, an award of compensatory damages is permitted under that statute and is not subject to the CGIA. The Sheriff's Office replied that (1) whether front pay is considered equitable relief is not dispositive of whether a claim lies in tort and is thus subject to the CGIA; (2) all claims for compensatory damages lie in tort and are subject to the CGIA; and (3) Williams's compensatory damages and front pay claims alleged elements that are common to multiple intentional torts. Thus, the Sheriff's Office asserted that all of Williams's claims were barred by the CGIA.

¶13 The district court ultimately agreed with Williams and denied the Sheriff's Office's motion to dismiss. In so concluding, the district court observed that front pay under CADA is an equitable remedy and under this court's prior case law, claims for equitable relief are not claims for injuries that lie in tort or could lie in tort and thus are not barred by the CGIA. The court likewise concluded that

8

Williams's claims for compensatory damages for age discrimination and retaliation under CADA were not barred by the CGIA. In the court's view, reading CADA's remedies provisions as a whole, a consistent and sensible reading permits the recovery of such damages against the state and other public entities.

¶14 The Sheriff's Office appealed, and, in a unanimous, published decision, a division of the court of appeals affirmed in part and reversed in part. *Williams v. Elder*, 2019 COA 172, __ P.3d __. As pertinent here, the division agreed that Williams's claims for front pay and for compensatory damages based on retaliation could proceed. *Id.* at ¶¶ 21–29. The division, however, concluded that under the express language of subsection 24-34-405(3)(g), Williams could not recover compensatory damages in connection with his age discrimination claim. *Williams*, ¶¶ 12–20, 29.

¶15 The Sheriff's Office petitioned this court for certiorari, and we granted that petition.

## II. Analysis

¶16 We begin by setting forth the applicable standards relating to statutory interpretation. We then proceed to discuss the relationship between CADA and the CGIA, ultimately concluding that a claim brought pursuant to CADA does not and could not lie in tort and is therefore not barred by the CGIA. Next, we consider whether the language of subsection 24-34-405(8)(g) evinces a legislative intent to

bar, under the CGIA, compensatory damages claims against a political subdivision of the state, and we conclude it does not. Last, we address whether claims for front pay under CADA are compensatory in nature and lie in tort, and are therefore barred by the CGIA. We conclude that they are not and that Williams may therefore pursue his claims for front pay.

## A. Applicable Legal Standards

¶17 We review questions of statutory interpretation de novo. *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016.

¶18 In construing a statute, we seek to ascertain and give effect to the General Assembly's intent. *Id.* In doing so, we apply words and phrases in accord with their plain and ordinary meanings. *Id.* In addition, we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results. *Id.* If the statute is unambiguous, then we apply it as written and need not resort to other rules of statutory construction. *Id.* If the statute is ambiguous, however, then we may look to the legislature's intent, the circumstances surrounding the statute's adoption, and the possible consequences of different interpretations to determine the statute's proper construction. *Colo. Oil & Gas Conservation Comm'n v. Martinez*,

10

2019 CO 3, ¶ 19, 433 P.3d 22, 28.  A statute is ambiguous when it is reasonably susceptible of multiple interpretations.  *Id.*

## B.  CADA Claims Do Not Lie in Tort

¶19    The Sheriff's Office contends that employment discrimination claims seeking compensatory damages pursuant to section 24-34-405 of CADA lie or could lie in tort and that the CGIA bars such claims when asserted against governmental entities.  We are not persuaded.

¶20    The CGIA provides, in pertinent part, "A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant," subject to exceptions not pertinent here.  § 24-10-106(1).  The CGIA's legislative declaration of policy makes clear that one of the CGIA's purposes is to protect the state and its political subdivisions from unlimited financial liability because "the state and its political subdivisions provide essential public services and functions" and "unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions." § 24-10-102, C.R.S. (2020).  In addition, we note that because the CGIA derogates Colorado's common law, we must strictly construe its immunity provisions but broadly construe its waiver provisions.  *Smokebrush Found. v. City of Colo. Springs*, 2018 CO 10, ¶ 22, 410 P.3d 1236, 1240.

11

¶21    In deciding whether a claim lies or could lie in tort, we have made clear that the form of the complaint is not determinative. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008). Instead, we consider both the nature of the injury and the relief sought. *Id.*

¶22    With respect to the nature of the injury, we have said, "When the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the CGIA." *Id.* We have further stated that the CGIA "encompasses all claims against a public entity arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty." *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008).

¶23    With respect to the relief sought, we have opined that the nature of the relief requested is not dispositive as to whether a claim lies in tort, although it may inform our understanding of the nature of the injury and the duty allegedly breached. *Robinson*, 179 P.3d at 1003. This is particularly true in the case of a statutory claim without origins in common law in which, for example, the legislature intended to address constitutionally based concerns of equality rather than compensation for personal injuries. *Id.* at 1006; *see also Brown Grp. Retail*, 182 P.3d at 690 (noting that "we have distinguished some statutorily created

12

duties, despite their general and non-contractual nature, on the basis of their broad policy rather than compensatory goals").

¶24   CADA is just such a statutory claim. CADA derives from the Colorado Civil Rights Act ("CRA"), which the legislature enacted in 1963 and which created a statutory duty prohibiting employers from engaging in a variety of discriminatory employment practices. *See* ch. 177, sec. 3, § 80-24-6, 1963 Colo. Sess. Laws 625, 627–28; § 24-34-402. Neither the CRA nor CADA has origins in the common law. Nor do claims under these statutes arise from the breach of a general duty of care. Rather, "the legislature adopted these anti-discrimination provisions to fulfill the 'basic responsibility of government to redress discriminatory employment practices on the basis of race, creed, color, sex, age, national origin, or ancestry.'" *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1174 (Colo. 2000) (quoting in part *Colo. C.R. Comm'n ex rel. Ramos v. Regents of the Univ. of Colo.*, 759 P.2d 726, 731 (Colo. 1988)). Accordingly, the CRA and CADA were "not designed primarily to compensate individual claimants but rather to eliminate discriminatory practices as defined by [those statutes]." *Id.* As a result, any benefits to an individual claimant resulting from a claim under CADA (and under the CRA before it) are "merely incidental" to those statutes' greater purposes of eliminating workplace discrimination. *See Brooke v. Rest. Servs., Inc.*, 906 P.2d 66, 71 (Colo. 1995); *Agnello v. Adolph Coors Co.*, 689 P.2d 1162, 1165 (Colo. App. 1984).

13

¶25 Several provisions of CADA reinforce our view of its non-compensatory purpose. For example, subsection 24-34-405(3)(d) provides for a capped damages structure that, in conjunction with the damages available under Title VII, limits compensatory damages awards based on the size of the employer and the egregiousness of the intentional discriminatory or unfair employment practice, not based on the claimant's injury. *See* § 24-34-405(3)(d); 42 U.S.C. § 1981a(b)(3) (2018). This statutory scheme confirms CADA's focus on discriminatory or unfair employment practices, and not on ensuring full compensation for claimants.

¶26 In addition, in our view, CADA's provision allowing a prevailing plaintiff to recover reasonable attorney fees effectively creates a mechanism by which claimants act as private attorneys general, seeking to vindicate the rights secured by CADA. Subsection 24-34-405(5) authorizes a court to award attorney fees to *all* prevailing plaintiffs but restricts awards of defense fees and costs to cases in which the plaintiff's claims are found to be frivolous, groundless, or vexatious. Such a structure encourages private actions that are more akin to civil prosecutions in the public interest of eliminating employment discrimination than to actions designed primarily to compensate an individual for personal injury. *See Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1081 (10th Cir. 1998) (noting that (1) under Title VII's private enforcement provisions, individual Title VII litigants act as private attorneys general; (2) it is in society's interest to ensure that equality of

14

opportunity in the workplace is not undermined by unlawful discrimination; and (3) even small victories advance that interest).

¶27 For these reasons, we conclude that CADA claims derive from statutory duties designed to implement the broad policy of eliminating intentional discriminatory or unfair employment practices, rather than to compensate an individual for personal injuries. Accordingly, CADA claims do not and could not lie in tort, and Williams's claims under CADA are not barred by the CGIA.

¶28 In so concluding, we acknowledge that our decision in *Conners*, the viability of which no party in this case has challenged, appears to have engendered some confusion in the aftermath of the 2013 amendments to CADA. We, however, see no inconsistency between that case and the case now before us.

¶29 In *Conners*, 993 P.2d at 1168, we addressed the question of whether claims for non-compensatory equitable relief under CADA's predecessor, the CRA, were claims for injuries that lie in tort or could lie in tort for purposes of the CGIA. We concluded that they were not, distinguishing between actions seeking compensatory damages for personal injuries and those in which any benefits to an individual claimant are incidental to the CRA's greater purpose of eliminating workplace discrimination. *Id.* at 1173–74.

¶30 Notwithstanding the Sheriff's Office's assertion to the contrary, our discussion in *Conners* was not so narrow as to address solely claims for equitable

relief.  Rather, *Conners* is properly understood as more broadly addressing a statute with no foundation in common law that principally served a societal purpose of eliminating workplace discrimination.  It was in this context that we concluded that claims under the CRA were not barred by the CGIA, and we apply the same analysis and reach the same conclusion here.

¶31    In reaching this conclusion, we are not persuaded by the Sheriff's Office's contention that the 2013 amendments to CADA changed the focus of that statute such that claims brought under it (including equitable claims) now lie or could lie in tort for CGIA purposes.  Contrary to the Sheriff's Office's position, we perceive nothing in the 2013 amendments suggesting a legislative intent to alter CADA's fundamental purpose of eliminating workplace discrimination and to substitute a regime focused on compensation for claimants.  Nor do we perceive anything in those amendments signaling a legislative intent to override our decision in *Conners* and to bring CADA claims within the immunity afforded by the CGIA.  To the contrary, we read the legislature's inclusion in the amendments of the private enforcement and capped damages provisions discussed above as reflecting the legislature's desire to advance CADA's central purpose of eliminating workplace discrimination while, at the same time, including within CADA itself provisions protecting public entities from unlimited financial liability, which, as noted above, is one of the CGIA's purposes.

¶32 Nor are we persuaded by the Sheriff's Office's argument that by referring to the CGIA in subsection 24-34-405(8)(g) of CADA, the General Assembly intended to signal that a CADA claim is a tort covered by the CGIA and that CGIA immunity should be waived, but only as to the state and not any of its political subdivisions. The Sheriff's Office has cited no authority or legislative history supporting such a premise, and we have seen no such authority or history. Accordingly, we are unwilling to infer such a legislative intent. Were we to infer any legislative intent from the statutory language, however, it would be solely that the legislature sought to ensure consistency with our ruling in *Conners* (which concluded that remedies under CADA's predecessor statute were *not* barred by the CGIA) while at the same time seeking to ensure governmental immunity from punitive damages claims. *See* § 24-34-405(3)(b)(I).

¶33 Finally, we are unpersuaded by the Sheriff's Office's argument that federal case law interpreting Title VII suggests that claims brought under CADA lie or could lie in tort. As an initial matter, we note that the federal case law on which the Sheriff's Office relies does not address CADA or its intent, nor does any of such case law contradict our understanding of CADA's central purpose of eliminating workplace discrimination. Moreover, although some federal cases at times refer to Title VII claims as statutory torts, other cases focus on Title VII's overriding purpose of promoting equality and prohibiting wrongful discrimination in the

17

workplace, analyzing Title VII much as we have analyzed CADA here. *Compare Price Waterhouse v. Hopkins*, 490 U.S. 228, 264 (1989) (O'Connor, J., concurring) (referring to a Title VII claim as a statutory employment "tort"), *with Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30 (1971) ("The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees."), *and* 29 C.F.R. § 1608.1(b) (2020) ("Congress enacted title VII in order to improve the economic and social conditions of minorities and women by providing equality of opportunity in the work place.").

¶34 In addition, we note that none of the federal cases describing Title VII claims as statutory torts do so in the context of discussing governmental immunity. Instead, to the extent that these cases discuss tort principles, they appear to do so in connection with defining the element of causation in Title VII claims. *See, e.g.*, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013) ("This case requires the Court to define the proper standard of causation for Title VII retaliation claims."); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009) (framing the primary issue as determining the meaning of the words "because of").

¶35 Lastly, we note that federal case law interpreting Title VII specifically allows for compensatory damages against governmental entities while precluding the

recovery of punitive damages. *See* 42 U.S.C. § 1981a(b) (permitting awards of compensatory damages against any respondent while prohibiting awards of punitive damages against the government, a government agency, or a political subdivision); *Baker v. Runyon*, 114 F.3d 668, 671–72 (7th Cir. 1997) (noting that Title VII's damages provision reinforces the clear statutory intent that compensatory damages are available against federal, state, and local governmental defendants to the same extent that they are available against private sector defendants but that punitive damages are not recoverable); *see also* 42 U.S.C. § 2000e-16 (2018) (prohibiting discrimination based on race, color, religion, sex, or national origin in the federal government).

¶36 Given that section 24-34-405(6) of CADA expressly requires that we construe, interpret, and apply section 24-34-405 consistently with the standards established through judicial interpretation of Title VII, among other federal laws, the fact that federal case law interpreting Title VII expressly allows compensatory damages claims against governmental entities further confirms the conclusion that we reach today.

¶37 For all of these reasons, we conclude that Williams's claim seeking compensatory relief against the Sheriff's Office under section 24-34-405 does not and could not lie in tort and therefore is not barred by the CGIA.

19

## C. Subsection 24-34-405(8)(g)

¶38 The Sheriff's Office next contends that although subsection 24-34-405(8)(g) provides that certain CADA claims for compensatory damages against "the state" are not subject to the CGIA, because the Sheriff's Office is a state agency and not "the state," Williams's compensatory damages claims here *are* subject to the CGIA. We are not persuaded.

¶39 As an initial matter, for the reasons noted above, compensatory damages claims under CADA do not and could not lie in tort, and therefore, such claims are not barred by the CGIA as against any public entity.

¶40 In any event, we do not agree that "the state," as that term is used in subsection 24-34-405(8)(g), excludes state agencies like the Sheriff's Office.

¶41 Subsection 24-34-405(8)(g) provides, "A claim filed pursuant to this subsection (8) by an aggrieved party against the state for compensatory damages for an intentional unfair or discriminatory employment practice is not subject to the [CGIA]." The term "the state," however, is undefined.

¶42 The Sheriff's Office contends that this term refers to the state of Colorado and only the state of Colorado, and that it does not include state agencies or political subdivisions. In support of this contention, the Sheriff's Office observes that elsewhere in CADA, the General Assembly has distinguished between "the state" and "any political subdivision, commission, department, institution, or

20

school district of the state." *See, e.g.*, § 24-34-405(3)(b)(I). The Sheriff's Office thus asserts that had the legislature intended for "the state" to include any state agencies or political subdivisions, it would have said so expressly.

¶43 Williams, in contrast, argues that the term "the state," as distinguished from "the state of Colorado," generally includes state agencies and political subdivisions. He further argues that, in his view, "the state" must be read to include state agencies and political subdivisions in order to construe all of the provisions of CADA harmoniously. *See, e.g.*, § 24-34-401(3), C.R.S. (2020) (defining an "employer" to include "the state of Colorado or any political subdivision, commission, department, institution, or school district thereof, and every other person employing persons within the state"); § 24-34-405(3)(b)(I) (precluding punitive damages awards against "the state or any political subdivision, commission, department, institution, or school district of the state").

¶44 In our view, both of these competing interpretations are reasonable. Accordingly, we conclude that the term "the state" as used in subsection 24-34-405(8)(g) is ambiguous, and we therefore look to the legislature's intent, the circumstances surrounding the statute's adoption, and the possible consequences of different interpretations to determine that provision's proper construction. *Martinez*, ¶ 19, 433 P.3d at 28. Doing so persuades us that, as used in subsection 24-34-405(8)(g), "the state" includes both the state of Colorado and also state

21

agencies and political subdivisions of the state. We reach this conclusion for several reasons.

¶45 First, we note that interpreting subsection 24-34-405(8)(g) as referring solely to the state of Colorado would render subsection 24-34-405(3)(b) largely superfluous. Subsection 24-34-405(3)(b)(I) states, in pertinent part, that "a plaintiff may recover punitive damages against a defendant, *other than the state or any political subdivision, commission, department, institution, or school district of the state*," if the enumerated criteria are demonstrated. (Emphasis added). If "the state," as used in subsection 24-34-405(8)(g), is read to refer solely to the state of Colorado, such that compensatory damages against state agencies and political subdivisions are barred, then the legislature would have had no reason to exclude punitive damages awards against state agencies or political subdivisions in subsection 24-34-405(3)(b) (because there would be no basis for an award of punitive damages against such entities, given their immunity from compensatory damages claims). *See Ferrer v. Okbamicael*, 2017 CO 14M, ¶ 44, 390 P.3d 836, 848 ("Exemplary damages do not present a separate, distinct cause of action, but rather, depend on an underlying claim for actual damages."); *Wagner v. Dan Unfug Motors, Inc.*, 529 P.2d 656, 659 (Colo. App. 1974) ("It is settled law that an award of exemplary damages cannot stand unless there has been an award of 'actual damages.'") (citations omitted); § 13-21-102(1)(a), C.R.S. (2020) (providing for an award of

22

exemplary damages in civil actions in which compensatory damages are assessed, if certain conditions are satisfied). As noted above, we cannot construe a statute so as to render any provision superfluous. *Agilent Techs.*, ¶ 16, 441 P.3d at 1016.

¶46 Second, the fiscal note accompanying the proposed 2013 amendments to CADA stated, "The size of potential damages allowed will depend on the size of the *local governments* involved and cannot be estimated." Fiscal Note on HB 13-1136, at 5, 69th Gen. Assemb., 1st Sess. (Feb. 13, 2013) (emphasis added). This acknowledgement that damages could be assessed against local governments reflects a contemporaneous understanding that local governments are, in fact, subject to such damage awards.

¶47 Finally, given CADA's primary goal of eliminating employment discrimination in the workplace, it would be illogical for us to infer that in attempting to broaden the tools available to those who have suffered workplace discrimination, the legislature, at the same time, excluded from CADA's reach a broad swath of workers employed by the state's political subdivisions and agencies. As noted above, we must avoid such illogical statutory constructions. *See Agilent Techs.*, ¶ 16, 441 P.3d at 1016.

¶48 Accordingly, we conclude that "the state," as used in subsection 24-34-405(8)(g), includes both the state of Colorado and any state agency or political subdivision.

## D. Front Pay

¶49 Finally, the Sheriff's Office argues that claims for front pay in connection with alleged age discrimination and retaliation are compensatory in nature and thus lie or could lie in tort for CGIA purposes.

¶50 As an initial matter, we emphasize that the issue before us concerns only whether Williams's demand for front pay in connection with his discrimination claims is compensatory and thus barred under the CGIA. We did not grant certiorari to review, and we therefore do not review, the conclusion of the division below that CADA itself expressly bars claims for compensatory damages in connection with an age discrimination claim. *See* § 24-34-405(3)(g).

¶51 Because we have concluded that CADA claims do not and could not lie in tort, Williams's claims for front pay under CADA likewise do not lie in tort and thus are not barred by the CGIA. In any event, under CADA's plain language, front pay is equitable in nature, and for that reason as well, claims for such relief are not compensatory, as the Sheriff's Office contends. *See* § 24-34-405(2) (establishing that back pay, front pay, or "[a]ny *other equitable* relief" is available against an employer who is found to have engaged in an unfair or discriminatory employment practice) (emphasis added). Indeed, the Sheriff's Office appears to have conceded this fact when, in its opening brief, it described equitable relief under CADA as including front pay.

24

¶52 We therefore conclude that Williams's claims for front pay under CADA are not barred by the CGIA.

## III. Conclusion

¶53 For the foregoing reasons, we conclude that CADA claims seeking compensatory damages do not and could not lie in tort and therefore are not barred by application of the CGIA. We further conclude that the term "the state," as used in subsection 24-34-405(8)(g), subsumes both the state of Colorado and its agencies and political subdivisions. Finally, we conclude that front pay under CADA is equitable and not compensatory in nature and that age discrimination and retaliation claims seeking front pay do not lie and could not lie in tort for CGIA purposes.

¶54 Accordingly, we affirm the judgment of the division below.

**JUSTICE MÁRQUEZ** dissents, and **CHIEF JUSTICE COATS** and **JUSTICE BOATRIGHT** join in the dissent.

JUSTICE MÁRQUEZ, dissenting.

¶55 Without question, the Colorado Anti-Discrimination Act, §§ 24-34-401 to -406, C.R.S. (2020) ("CADA"), serves to fulfill a "basic responsibility of government to redress discriminatory employment practices on the basis of race, creed, color, sex, age, national origin, or ancestry," maj. op. ¶ 24 (quoting *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1174 (Colo. 2000)). But claims under CADA are claims for "injuries which lie in tort or could lie in tort" and therefore are barred by the Colorado Governmental Immunity Act, §§ 24-10-101 to -120, C.R.S. (2020) ("CGIA"). While it may well be that the compensatory damages remedy afforded by CADA should, as a policy matter, be extended to employees of Colorado's political subdivisions, I cannot agree that the 2013 amendments to CADA waived governmental immunity to accomplish that.

¶56 The majority holds today that claims brought under CADA fall entirely outside of the scope of the CGIA. Maj. op. ¶¶ 19–37, 53. The majority reaches this conclusion by relying on and extending the reasoning of our opinion in *Conners*. There, we held that "the CGIA does not provide the government immunity from claims for relief under the [Colorado Civil Rights Act][1] when such claims are not

---

[1] *Conners* addressed a prior version of CADA known as the Colorado Civil Rights Act, or CRA.

based on providing compensatory relief to individuals but instead focus on the anti-discrimination purposes of the statute." *Conners*, 993 P.2d at 1176–77.

¶57     I believe that this court's opinion in *Conners* strayed significantly from the plain text of the CGIA, and the majority's extension of our erroneous holding in that case continues down that errant path. Under the CGIA, governmental immunity extends to all claims that "lie in tort *or could lie in tort regardless of . . . the form of relief* chosen by the claimant." § 24-10-106(1), C.R.S. (2020) (emphasis added). *Conners* squarely contravened this statutory language by focusing on the forms of relief available under the CRA to conclude that claims brought under that Act were "non-compensatory" in nature, and therefore, did not and could not lie in tort. In so doing, the opinion erroneously reasoned that the *relief* afforded or sought drives whether the *claim* "lie[s] in tort or could lie in tort" for purposes of the CGIA.

¶58     Today, the majority further deviates from the scope of government immunity set forth in section 24-10-106(1) by grafting an exception for statutory claims that "principally serve[] a societal purpose." *See* maj. op. ¶ 30. Not only does the majority's reading of the CGIA find no purchase in the statutory text, it also creates a vague standard against which other statutory causes of action must now be measured.

2

¶59 Fidelity to the text of the CGIA demands that we apply the "lie[s] in tort or could lie in tort" standard as written to determine whether CGIA immunity encompasses claims under CADA. Because the injuries that give rise to CADA claims can serve as the basis for common law tort claims, such as wrongful discharge in violation of public policy or tortious interference with an employment contract, *see Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992); *Brooke v. Rest. Servs., Inc.*, 906 P.2d 66, 68 (Colo. 1995), claims under CADA plainly "could lie in tort." Accordingly, CGIA immunity extends to CADA claims unless the General Assembly has expressly waived immunity. There is no such waiver applicable here. While the General Assembly may have effectuated a waiver of CGIA immunity for claims for compensatory damages brought against the *state* in section 24-34-405(8)(g), C.R.S. (2020), it did not do so for claims against political subdivisions.

¶60 Though perhaps this omission was mere oversight, we cannot be sure; as I explain in my dissent today in *Houchin*, there are rational, fiscal reasons to protect local governments from compensatory damages claims under CADA. *See Denver Health v. Houchin*, 2020 CO 89, ¶¶ 32–35, __ P.3d __ (Márquez, J., dissenting). But even assuming it was oversight, we cannot fix the legislature's mistakes by reading language into section 24-34-405(8)(g) that isn't there. Maj. op. ¶¶ 2, 44, 48, 53

(construing statutory reference to "the state" to include "state agencies and political subdivisions of the state"). Thus, I respectfully dissent.

## I. The Approach Adopted by *Conners* and the Majority is Contrary to the Text and Purpose of the CGIA

¶61 The approach used by *Conners* and the majority looks to the nature of relief afforded by a statute and sought by a claimant to determine whether statutory claims fall within the CGIA. Such an approach runs directly counter to the plain text and intent behind the scope of immunity set forth in section 24-10-106(1). Further, despite offering an array of justifications for its conclusion that CADA claims do not fall within the CGIA, the majority fails to articulate a real test to determine whether other statutory claims for injury come within the CGIA's ambit.

## A. The General Assembly Intended the "Could Lie in Tort" Standard to be Interpreted Expansively

¶62 For nearly a century after statehood, Colorado and its political subdivisions were immune from suit under the common law doctrine of sovereign immunity. *See Evans v. Bd. of Cnty. Comm'rs*, 482 P.2d 968, 970 (Colo. 1971). In 1971, this court abrogated the doctrine in *Evans* and two companion cases, *Proffitt v. State*, 482 P.2d 965 (Colo. 1971), and *Flournoy v. School District No. One in City & County of Denver*, 482 P.2d 966 (Colo. 1971). But we made clear that "[i]f the General Assembly

4

wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so." *Evans*, 482 P.2d at 972.

¶63    Two months later, the General Assembly responded by enacting the CGIA. *See* ch. 323, sec. 1, §§ 130-11-1 to -17, 1971 Colo. Sess. Laws 1204, 1218. The CGIA broadly reestablished governmental immunity, allowing suit against public entities "only to such an extent and subject to such conditions as are provided by this article." *See* § 24-10-102, C.R.S. (2020); *see also Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 31, 325 P.3d 571, 581 ("The CGIA was designed to specifically define—and thus limit—the circumstances when immunity is waived by public entities.").[2] To this end, the Act provides that public entities "shall be immune

---

[2] The majority opines that, "because the CGIA derogates Colorado's common law, we must strictly construe its immunity provisions." Maj. op. ¶ 20. This is not the first time this court has cited this notion when dealing with the CGIA. *See Smokebrush Found. v. City of Colo. Springs*, 2018 CO 10, ¶ 22, 410 P.3d 1236, 1240; *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000). But this interpretative canon makes no sense in the context of the CGIA. As noted, the common law for nearly a century was that the government enjoyed sovereign immunity. And when we abrogated the doctrine in *Evans*, we expressly invited the legislature to re-establish governmental immunity in whole or in part. The legislature did so almost immediately. Thus, it is somewhat misleading to suggest that the CGIA "derogates the common law," when at most that "common law" *absence* of sovereign immunity existed for a few weeks. Moreover, when we invited the legislature in *Evans* to reestablish governmental immunity, we stated that the "full authority" to determine the scope of immunity belongs "in the hands of the General Assembly." 482 P.2d at 972. Accordingly, when determining the scope of immunity granted under the CGIA, "our touchstone remains the intent of the legislature," not judicially adopted interpretive canons. *See St. Vrain Valley*

from liability in *all claims for injury which lie in tort or could lie in tort regardless of* whether that may be the type of action or *the form of relief* chosen by the claimant except as provided otherwise in this section." § 24-10-106(1) (emphases added).

¶64 Although the CGIA's "could lie in tort" concept is somewhat nebulous, we have recognized that the CGIA "broadly encompasses all claims against a public entity arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty." *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008); *see also State Pers. Bd. v. Lloyd*, 752 P.2d 559, 563 (Colo. 1988) ("The clear import of this language is that the [CGIA] was intended to apply to all actions against public entities or their employees which lie, or could lie, in tort but not contract.").

¶65 Tellingly, nearly all of the cases in which we have held that a claim did not and could not "lie in tort" for purposes of the CGIA involved contractual claims. *See City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*, 2017 CO 97, ¶¶ 41–42, 403 P.3d 609, 617 (unjust enrichment arising out of a contract dispute); *Denny Constr., Inc. v. City & Cnty. of Denver ex rel. Bd. of Water Comm'rs*, 199 P.3d 742, 750 (Colo. 2009) (lost profit damages in a breach of contract claim);

---

*Sch. Dist. RE-1J v. A.R.L. by & through Loveland*, 2014 CO 33, ¶ 12, 325 P.3d 1014, 1019.

6

*Berg v. State Bd. of Agric.*, 919 P.2d 254, 259 (Colo. 1996) (promissory estoppel); *Bd. of Cnty. Comm'rs v. DeLozier*, 917 P.2d 714, 717 (Colo. 1996) (promissory estoppel); *Julesburg Sch. Dist. No. RE-1 v. Ebke*, 562 P.2d 419, 421 (Colo. 1977) (breach of contractual duty).

¶66    By contrast, we have generally determined that claims arising from non-contractual injuries fall within the CGIA's broad ambit. *See, e.g.*, *Brown*, 182 P.3d at 692 (claims for contribution, unjust enrichment, and declaratory relief); *Lloyd*, 752 P.2d at 563 (retaliatory discharge claim under a state employee protection statute); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008) (contract and unjust enrichment claims that "could alternatively be pleaded and remedied through a tort claim"). *Conners* stands as a rare exception to these trends.[3]

---

[3] To my knowledge, the only other instance in which this court has determined that a non-contractual claim does not and could not lie in tort for purposes of the CGIA was in *Antonopoulos v. Town of Telluride*, 532 P.2d 346 (Colo. 1975). There, we held that claims brought pursuant to the Liability of Peace Officers Act, § 29-5-111, C.R.S. (2020), were not subject to the CGIA because "liability of a municipality's police has traditionally existed despite the doctrine of sovereign immunity," and thus "the legislature's enactment of the [CGIA] was without effect on a peace officer's vulnerability to liability." *Antonopoulos*, 532 P.2d at 349. Additionally, although this court has never been squarely presented with the issue, we acknowledged in *Lloyd* that inverse condemnation and property damage claims brought pursuant to the just compensation clause, Colo. Const. art. II, § 15, may not lie in tort for purposes of the CGIA. *See* 752 P.2d at 563 n.6 (citing *SRB v. Bd. of Cnty. Comm'rs*, 601 P.2d 1082 (Colo. App. 1979); and *Hayden v. Bd. of Cnty. Comm'rs*, 580 P.2d 830 (Colo. App. 1978)).

7

## B. *Conners* Misapplied the CGIA's "Could Lie in Tort" Standard

¶67    In *Conners*, this court determined that claims brought pursuant to the CRA "neither lie in tort nor could lie in tort for the purposes of the CGIA." 993 P.2d at 1174. We reached this conclusion by centering our analysis largely on the equitable and non-compensatory forms of relief available under the CRA, emphasizing that the CRA "does not provide monetary compensation for tort-like personal injuries for those who are the victims of prohibited discrimination." *Id.* at 1176. We reasoned that these limited forms of relief were aimed at "eliminating workplace discrimination, not compensating individuals for their particular injuries arising from violations of the CRA." *Id.* at 1175. Working backwards from the *relief* available under the statute, we concluded that that the *claims* themselves were "equitable and non-compensatory in nature," and therefore such actions "neither lie in tort nor could lie in tort for the purposes of the CGIA." *Id.* at 1174. We even instructed that a trial court "must consider the nature of the relief sought to determine whether a particular action 'lies in tort or could lie in tort'" for purposes of the CGIA, openly acknowledging that to do so was "arguably inconsistent with the CGIA's language." *Id.* at 1176. Nonetheless following this approach, we relied on the non-compensatory and equitable relief afforded under the CRA to conclude that the claims brought under that Act were not for injuries which "lie in tort" for purposes of the CGIA. *Id.*

8

¶68 Although we later retreated somewhat from *Conners* in *Robinson* to say that the nature of the relief requested is not dispositive, we reiterated that the nature of the relief serves to inform our understanding of the injury and the duty breached to determine if a claim lies or could lie in tort. 179 P.3d at 1006.

¶69 Notably, the majority now overlooks the absence of compensatory relief so critical to our holding in *Conners*. Maj. op. ¶ 29. The majority ultimately concludes that it is solely CADA's "societal purpose," rather than the absence of compensatory damages, that takes CADA claims outside of the scope of the CGIA. *See id.* at ¶¶ 29–31. But in addition to ignoring the core rationale for our holding in *Conners*, the majority's analysis repeats the broader error underlying our opinion in that case; by focusing on the nature of relief provided by the CRA rather than the type of injuries underlying the claims brought, *Conners* ignored the legislature's mandate that governmental immunity applies to "all claims for *injury* which lie in tort or could lie in tort *regardless of . . . the form of relief* chosen by the claimant." § 24-10-106(1) (emphases added).

¶70 At no point did *Conners*, nor does the majority today, explain why the *injuries* underlying CADA claims cannot lie in tort. As we have more recently made clear, "[t]he nature of the injury alleged—*not the relief requested*—is the primary inquiry to determine whether the CGIA applies to [a] claim." *Open Door Ministries v. Lipschuetz*, 2016 CO 37M, ¶ 16, 373 P.3d 575, 579 (emphasis added).

9

To determine whether a claim "could lie in tort" for purposes of the CGIA, we should look to whether the claimant is asserting injuries arising out of a "breach of a general duty of care," *Brown*, 182 P.3d at 691, "regardless of whether that may be . . . the form of relief" provided by the cause of action in question or sought by the claimant at bar, § 24-10-106(1).

### C. The Majority Has Articulated No Real Test to Determine Whether Statutory Claims Fall Outside of the CGIA

¶71    The majority offers two main justifications to support its conclusion that CADA claims are not subject to the CGIA.  Neither is persuasive nor offers workable guidance for determining whether other statutory causes of action are subject to the CGIA.

¶72    First, the majority opines that, because CADA serves "greater purposes" that are in the "public interest," it is primarily non-compensatory in nature and thus cannot be subject to the CGIA.  *See* maj. op. ¶¶ 24, 26.  But many causes of action that *are* subject to the CGIA implicate public policy.  By their very nature, claims for wrongful discharge in violation of public policy have public interest implications, *Martin Marietta*, 823 P.2d at 109, but are still torts subject to the CGIA.  And in *Lloyd* we determined that a claim brought pursuant to the state employee whistleblower statute, which clearly implicates the public interest, is nevertheless subject to the CGIA.  *See* 752 P.2d at 565.  I am concerned that the majority's

10

approach amounts to little more than an ad hoc inquiry in which courts determine which policy goals are in the "public interest" and thus outside the scope of the CGIA. Such a process gives the appearance of judicial policymaking.[4] Instead, such determinations can and should be made by the General Assembly in the form of an express waiver of CGIA immunity.

¶73 Second, the majority suggests that CADA claims may not be subject to the CGIA because they do not have "origins in the common law." Maj. op. ¶ 24. But we have never before required a claim to have common law origins to come within the scope of the CGIA. Indeed, we have held the exact opposite in *Brown*. 182 P.3d at 690–91 ("[W]e have never suggested that coverage of the Act is limited to claims that are capable of being recast as common-law torts by the party bringing the claim. Most especially, we have never suggested that claims for relief developed and historically administered by courts of chancery or equity, rather than courts of law, necessarily fall outside the coverage of the Act."). And we have determined that other statutory claims that have no common law analogue fall within the

---

[4] That the majority makes such a determination here with reference only to judicial decisions—rather than, say, a legislative declaration—makes this approach all the more concerning. *See* maj. op. ¶¶ 24, 26.

11

scope of the CGIA. *See Lloyd*, 752 P.2d at 565 (holding that claims brought pursuant to a whistleblower statute were subject to the CGIA).

¶74 I fear the majority's opinion leaves the legislature and courts with no clear or workable standard as to what statutory causes of action fall outside of the CGIA. Perhaps any statutory claim that does not "ensur[e] *full compensation* for claimants" has a primarily "non-compensatory purpose" and is thus outside the scope of the CGIA. *See* maj. op. ¶ 25 (emphasis added). Or perhaps this is only true for claims that do not have "origins in the common law." *Id.* at ¶ 24. Alternatively, maybe the CGIA applies to all statutory claims other than those that "address constitutionally based concerns," *id.* at ¶ 23, or fulfill a "basic responsibility of government," *id.* at ¶ 24 (quoting *Conners*, 993 P.2d at 1174). All are equally plausible readings of the majority's opinion.

## II. CADA Claims Could Lie in Tort

¶75 Looking simply to the broad "could lie in tort" language used by the legislature in section 24-10-106(1), CADA claims clearly fall within the scope of the CGIA. CADA claims involve an assertion of a "breach of a general duty of care" to not discriminate against employees and thus plainly "could lie in tort." *See Brown*, 182 P.3d at 691; maj. op. ¶ 24 (noting that CADA creates "a statutory duty prohibiting employers from engaging in a variety of discriminatory employment

12

practices").[5] The scope of the CGIA "is not limited to claims that are presented, or are capable of being presented, directly by the claimant as tort claims." *Brown*, 182 P.3d at 691. However, if "the pleaded allegations . . . could be alternatively pleaded in tort" this strongly suggests a statutory claim is subject to the CGIA. *Robinson*, 179 P.3d at 1006.

¶76 The same injuries that underlie CADA claims could be alternatively pleaded as tort claims. An employee who is terminated in violation of "a clearly expressed public policy relating to . . . the employee's right or privilege as a worker" could plead a tort claim for wrongful discharge in violation of public policy. *Martin Marietta*, 823 P.2d at 109.[6] The same employee could bring a claim for tortious interference with employment. *See Brooke*, 906 P.2d at 68. As we have made clear,

---

[5] The majority asserts, without explanation, that this statutory duty not to discriminate is not a general duty of care. *See* maj. op. ¶ 24. Why? Because it only applies to employers? Because the duty does not have common law origins? It is not clear. As with its failure to establish a clear test for determining whether statutory claims fall within the CGIA, I fear the majority's unexplained statement here may sow confusion.

[6] In *Middleton v. Hartman*, 45 P.3d 721 (Colo. 2002), we later hinted that claims involving such conduct are subject to the CGIA. Noting that the plaintiff had conceded that her retaliation claim under the Fair Labor Standards Act, 29 U.S.C. § 215 (1994), could lie in tort for purposes of the CGIA, we cited to *Martin Marietta* for the notion that "a retaliatory discharge claim is a common law tort claim." *Middleton*, 45 P.3d at 730 n.6.

both tort claims remain viable as alternative causes of action even after the enactment of CADA. *See id.* at 70 n.4.

¶77 Even if the majority is correct that CADA claims themselves are not torts, it fails to address why the injuries underlying those claims could not lie in tort. CADA claims involve breach of a general duty to not engage in discriminatory employment practices. Breach of this duty can form the basis of either a CADA claim or a common law tort claim. Thus, CADA claims "could lie in tort," and claims against governmental entities are barred under section 24-10-106 unless the General Assembly has expressly waived immunity.

### III. The General Assembly Did Not Waive Immunity for Political Subdivisions

¶78 In enacting the CGIA, the General Assembly expressly intended to "includ[e] within one article all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable" to plaintiffs. § 24-10-102. To that end, section 24-10-106(1) provides that "a public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort . . . except as provided otherwise in this section." The provision goes on to state that "[s]overeign immunity is waived" in specific, enumerated instances set forth in subsection (1). § 24-10-106(1).

¶79 In the past, when the General Assembly has sought to alter or waive immunity for claims, it has amended section 24-10-106 to reflect the change. *See,*

14

*e.g.*, ch. 280, sec. 1, § 24-10-106(1)(g), 2004 Colo. Sess. Laws 1056, 1056 (waiving immunity for injuries resulting from operation and maintenance of a qualified state capital asset); ch. 434, sec. 4, § 24-10-106(1)(h), 2008 Colo. Sess. Laws 2224, 2226–27 (waiving immunity for injuries resulting from a failure to perform an education employment background check); ch. 212, sec. 3, § 24-10-106(1)(i), 2015 Colo. Sess. Laws 773, 776 (waiving immunity for injuries resulting from a police officer interfering with the lawful recording of a police incident); *see also* ch. 280, sec. 1, § 24-10-106(1.5), 2002 Colo. Sess. Laws 63, 63 (removing waiver of immunity for backcountry landing facilities).

¶80     The General Assembly's consistent practice in this regard, coupled with the CGIA's stated goal of establishing all bases for governmental liability within one article, strongly suggests that when the legislature intends to waive immunity, it does so through section 24-10-106.[7]  Yet the General Assembly did *not* amend

---

[7] Although we have never squarely determined the issue, it may be possible for the General Assembly to alter governmental immunity outside of section 24-10-106 if it does so clearly and unambiguously.  In *Norsby v. Jensen*, 916 P.2d 555, 560 (Colo. App. 1995), for example, a division of the court of appeals determined that a statute limiting liability for Department of Corrections "boot camp" programs acted to amend CGIA liability even though the relevant waiver provision in section 24-10-106 was not altered.  We cited *Norsby* approvingly in *Brighton Sch. Dist.*, ¶ 18, 325 P.3d at 577, noting that the statute at issue in *Norsby* was in "truly irreconcilable conflict" with the CGIA.

section 24-10-106(1) to waive liability for CADA claims as a part of the 2013 amendments.

¶81 The General Assembly likewise did not waive immunity for political subdivisions anywhere in CADA. CADA provides that a claim "against the *state* for compensatory damages . . . is not subject to the [CGIA]," but does not provide that the same holds true for a claim against a *political subdivision*. § 24-34-405(8)(g) (emphasis added). Although the term "state" is not defined in CADA, the legislature clearly treated "the state" as distinct from "political subdivisions" by consistently using the phrase "the state or any political subdivision" throughout CADA when it sought to refer to both the state and local governments. *See* §§ 24-34-401(3), 24-34-405(3)(b)(I), 24-34-405(8)(b). Accordingly, we must assume the legislature's lone use of the term "state" in section 24-34-405(8)(g) was intentional. Standing alone, we must read the term "state" in section 24-34-405(8)(g) to unambiguously *exclude* political subdivisions.[8]

¶82 Unlike the majority, *see* maj. op. ¶¶ 38–48, I cannot plausibly read "state" to encompass political subdivisions in section 24-34-405(8)(g) when the term plainly

---

[8] Notably, the CGIA, to which subsection (8)(g) cites, defines "state" as excluding any "county, municipality, city and county, school district, special district, or any other kind of . . . political subdivision." § 24-10-103(7), C.R.S. (2020).

means something different throughout the remainder of CADA, including elsewhere within section 24-34-405 itself. *See Colo. Common Cause v. Meyer*, 758 P.2d 153, 161 (Colo. 1988) ("[W]hen, as here, the legislature employs the same words or phrases in different parts of a statute, . . . the meaning attributed to the words or phrases in one part of the statute should be ascribed to the same words or phrases found elsewhere in the statute."). Because the reference to "state" in subsection (8)(g) unambiguously excludes political subdivisions, we need not resort to legislative history to determine the meaning of the word "state." *See* maj. op. ¶¶ 44–46.

¶83 The majority posits that interpreting the term "state" in section 24-34-405(8)(g) to exclude political subdivisions would render section 24-34-405(3)(b)(I) "largely superfluous" because there is no need to preclude punitive damages against political subdivisions if all claims against such entities are barred under the CGIA. Maj. op. ¶ 45. But the majority's interpretation renders section 24-34-405(8)(g) similarly superfluous; if *all* CADA claims fall outside of the CGIA, what purpose does subsection (8)(g) serve? In truth, the 2013 amendments to CADA added internally inconsistent language, perhaps in an attempt to grapple with our unclear holding in *Conners*. Given the vague test established by the majority today, I suspect we will be confronted with similar challenges of statutory interpretation in the future.

17

¶84 If the General Assembly intended to waive immunity for political subdivisions, it did not effectuate that intent in the language of CADA as enacted. Neither section 24-10-106(1) of the CGIA nor CADA contains any express waiver of sovereign immunity, and we cannot "read into a statute language that is not there." *In re Marriage of Gromicko*, 2017 CO 1, ¶ 23, 387 P.3d 58, 62. Absent such a waiver of immunity from liability for political subdivisions, claims brought against such entities are barred under the CGIA.

## IV. Conclusion

¶85 I fully agree with the majority that CADA serves a fundamental role in eliminating workplace discrimination. But I cannot read language into the Act that does not exist. CADA claims plainly "could lie in tort," and the General Assembly has not waived immunity for such claims with respect to political subdivisions. Accordingly, Williams's claim against the Sheriff's Office is barred under the CGIA. Thus, because I would reverse the judgment of the court of appeals, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE COATS and JUSTICE BOATRIGHT join in this dissent.