## No. 13,878.

MORTGAGE BROKERAGE COMPANY *v.* MILLS ET AL.

(67 P. [2d] 68)

Decided April 5, 1937.

Mr. FRANK MCDONOUGH, JR., Mr. GILBERT L. MCDONOUGH, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, Mr. ARTHUR H. LAWS, for defendants in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

IN this opinion reference will be made to plaintiff in error as plaintiff, and to defendants in error, as defendants, or Mills, and surety or bonding company.

Plaintiff, by eleven separate causes of action, sought to recover approximately $4,000 from Mills, a former secretary-treasurer of the company, and the surety on his bond. Four causes of action were dismissed with prejudice, and trial had to the court on remaining causes, resulting in a finding in favor of both Mills and surety on all causes of action. To reverse the judgment entered on this finding, plaintiff prosecutes the writ of error herein.

Plaintiff's business is that of making loans secured by second mortgages on real estate. During the time covered by the transaction involved herein, Mills was secretary-treasurer, director, attorney and general manager of plaintiff, and apparently the management of its entire business was placed in his hands. A bond was required of, and furnished by, him in the sum of $3,000, with the bonding company as surety, which was in full force and effect at the times mentioned in the complaint. The bond is set out as an exhibit, is in form of the usual fidelity bond, and provides for payment of any direct loss caused by the employee named therein ''through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, *wilful misapplication,* or any other act of fraud or dishonesty * * *.''

Each cause of action represents transactions in which Mills, so far as the corporation records disclose, exercised full authority without formal corporate approval. He testified to the effect that the other directors

would not act or attend meetings of the board which he called and attempted to have convened; and in some instances, when he advised some of them by telephone or otherwise of certain contemplated action that seemed advisable to him, they gave their consent and approval. In substance, the nature of his conduct, which forms the basis of this action, was that he, acting for his company under the above circumstances, loaned the company's money in greater amounts than the loan applications called for, it appearing that such excess amounts were necessary to clean up back taxes and similar items; that he paid off first mortgages—which were in default—on property upon which the company carried second mortgages; and negotiated other transactions of a similar nature. He testified—and it is not denied—that he sometimes made personal monetary advances in such matters; that he received no benefit from the transactions; and was acting in good faith, for the best interests of his company at all times according to his best judgment. It is to be noted that there is not the slightest reflection upon the personal integrity of Mills, and that the use of the terms "wrongful abstraction, wilful misapplication," are used as they relate to the conduct of the business affairs of the company for which he was acting and to follow the wording employed in the bond. As used therein it is clear that they were to be construed to indicate or denote acts of fraud or dishonesty. The provision of the bond hereinbefore quoted cannot be construed in any other way than with the meaning that the terms used are intended to denote the specific acts of dishonesty named, because immediately following them, and in the same sentence we read, "or any other act of fraud or dishonesty," the latter being an inclusive phrase intended to embrace all fraudulent or dishonest acts whether enumerated or not. It cannot seriously be contended that the very purpose of a bond, of the nature of the one here involved, is other than to indemnify against the illegal or wrongful use, or the taking of money or other property

corruptly; therefore, before the terms used in the bond before us could have application as the basis of liability on the part of the surety, it first must be established that Mills converted the money or property to his own use or benefit, intending thereby to defraud his company.

This action seems to be predicated entirely upon the liability of Mills as principal and the bonding company as surety. The question of the negligence, if any, of Mills is discussed by counsel for defendants, while counsel for plaintiff disclaim any attempt to recover on the theory of negligence, further stating that the only part of the argument of counsel for plaintiff which concerns the merits of the case at hand is that which dwells upon the question of liability to be determined from the face of the bond. With this concession in mind, we need only consider the question thus presented, and feel that disposition can be made under the admitted, or at least not seriously disputed, facts by the simple statement that the entire business of plaintiff was in the hands and management of Mills. His failure properly to attend to the business of the company as it came before him would have been a neglect of duty and afford sufficient grounds of complaint by those whose interests were involved. He was called upon to act, and, as the record discloses, to act alone. He became the sole managing agent of the company, and in the absence of a showing of bad faith or corrupt motive, he was presumed, in his management and as agent, to act according to the necessities of the occasion, and no liability would attach in the use of such implied authority and the discretion incidental thereto. The result of Mills' transaction in this case, being no more than the aftereffects of the use of bad judgment, without bad faith, is not actionable within the terms of the bond. His intentions, coupled with his unquestioned good faith at the time of the transactions, and not the results as they finally developed are the determining factors. A similar view was entertained by the trial

judge and finds abundant support in the evidence; accordingly the judgment will stand, and is affirmed.

Mr. Chief Justice Burke and Mr. Justice Knous concur.