556 P.2d 82 (1976)
Fred GILLIES and the Denver Post, Inc., Plaintiffs-Appellees,
The People of the State of Colorado ex rel. J. D. MacFarlane, Plaintiff-Intervenor,
v.
Dolores SCHMIDT et al., Defendants-Appellants.
No. 75-899.
Colorado Court of Appeals, Div. I.
September 2, 1976.
Rehearing Denied September 23, 1976.
Certiorari Denied November 15, 1976.
*84 Yegge, Hall & Evans, Richard D. Hall, Thomas B. Kelley, Denver, for plaintiffs-appellees.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Asst. Atty. Gen., Harry N. MacLean, First Asst. Atty. Gen., Antonio J. Califa, Asst. Atty. Gen., Denver, for plaintiff-intervenor.
Max P. Zall, City Atty., Frank A. Elzi, Robert A. Powell, Asst. City Attys., Denver, for defendants-appellants.
Selected for Official Publication.
COYTE, Judge.
Plaintiffs initiated this action seeking an injunction requiring the Denver Inter-Agency Committee on Child Abuse to desist from the practice of holding meetings at which the press and public were excluded. In an attempt to harmonize the provisions of the Public Meetings Law and the confidentiality provisions of the Child Protection Act, the trial court entered an injunction barring closed meetings in most instances, but maintaining the confidentiality of certain information. The Committee appeals, and we affirm in part and reverse in part.
Defendant Committee was created pursuant to § 19-10-109(6)(a), C.R.S.1973 (1975 Cum.Supp.) of the Child Protection Act of 1975. The powers of the team are derived from § 19-10-109(6)(b), C.R.S. 1973 (1975 Cum.Supp.) which provides:
"The child protection team shall review the files and other records of (a report of child abuse), including the diagnostic, prognostic, and treatment services being offered to the family in connection with the reported abuse, and shall make a report to the county department with suggestions for further action or stating that the child protection team has no suggestions . . .."
The Child Protection Act further provides in § 19-10-115(1), C.R.S.1973 (1975 Cum. Supp.) that:
"It is unlawful for any person or agency to solicit, encourage disclosure of, or disclose the contents of any record or report made under this article, . . ."
And, in § 19-10-115(2), C.R.S.1973 (1975 Cum.Supp.), the Child Protection Act specifies in detail those persons and agencies who are to have access to child abuse reports and records.
Despite these provisions, the plaintiffs assert that the Public Meetings Law, § 29-9-101, C.R.S.1973, (1975 Cum.Supp.) takes precedence and that they should not be excluded from meetings of the Committee. That statute provides:
"All meetings of any board, commission, committee, or authority of a political subdivision of the state supported by law in its activities in whole or in part with public funds are declared to be public meetings and open to the public at all times; but such groups, by majority consent of members present, may go into executive session for consideration of documents or testimony given in confidence but shall not make final policy decisions, nor shall any resolution, rule, ordinance, regulation, or formal action or any action approving a contract or calling for the payment of money be adopted or approved at the session which is closed to the general public."
The trial court determined that the two statutes could be harmonized and entered the following orders:
"IT IS THEREFORE ORDERED that the defendants are hereby ordered and restrained from in any manner excluding or preventing the attendance of the plaintiffs or other members of the general public at its meetings, which are hereby declared to be public meetings and open to the public at all times; provided, however, that the Child Protection Team may, by majority consent of its members present, go into executive session *85 for consideration of confidential information, records or reports where such appears appropriate.
"IT IS FURTHER ORDERED that the plaintiffs and general public shall not be furnished any information which would identify the child, parents or informant, nor shall they in any way publicize the matters disclosed in any meeting which may lead to the identity of said persons.
"IT IS FURTHER ORDERED that non-confidential information contained in child abuse records and reports shall be reviewed and considered by such Committee in open meetings open to the public."
To resolve this dispute we must address the apparent conflict between the Public Meetings Law and the confidentiality provisions of the Child Protection Act.

I
Statutory repeal by implication is viewed with disfavor in Colorado, Casados v. People, 119 Colo. 444, 204 P.2d 557 (1949), and general legislation will not be interpreted to repeal conflicting special statutory or constitutional provisions unless the intent to do so is clear and unmistakable. Associated Students of University of Colorado v. Regents of University of Colorado, Colo., 543 P.2d 59 (1975); People v. Burke, 185 Colo. 19, 521 P.2d 783 (1974). See § 2-4-205, C.R.S.1973. Rather, judicial construction which harmonizes apparently conflicting statutes is preferred. Bagby v. School District No. 1, 186 Colo. 428, 528 P.2d 1299 (1974); Marshall v. Golden, 147 Colo. 521, 363 P.2d 650 (1961). Therefore, our primary duty is to construe these two statutes in a complementary fashion if possible.
Courts resolving cases brought under public meeting laws have uniformly required open meetings, and even where the relevant statute has authorized executive sessions, the courts have consistently required that final or binding action be taken in meetings open to the public. Laman v. McCord, 245 Ark. 401, 432 S.W.2d 753 (1968); Board of Public Instruction v. Doran, 224 So.2d 693 (Fla.1969); Dobrovolny v. Reinhardt, 173 N.W.2d 837 (Iowa 1970); Reeves v. Orleans Parish School Board, La.App., 264 So.2d 243, rev'd on other grounds, 281 So.2d 719 (La.App. 1972); Channel 10, Inc. v. Independent School District No. 709, 298 Minn. 306, 215 N.W.2d 814 (1974); Selkowe v. Bean, 109 N.H. 247, 249 A.2d 35 (1968); Wolf v. Zoning Board of Adjustment, 79 N.J.Super. 546, 192 A.2d 305 (1963). See Annot. 38 A.L.R.3d 1070.
Indeed, the only cases where courts have favored legislatively created rights of confidentiality over statutes requiring open meetings have been those involving the attorney-client privilege. In Associated Students of University of Colorado v. Regents of University of Colorado, supra, the Supreme Court affirmed, in passing, the ruling of the trial court that the Sunshine Act (which has provisions for open meetings similar to that of the Public Meetings Law but is limited in scope to state agencies) did not repeal by implication the statute concerning the attorney-client evidentiary privilege. A parallel has been drawn between the lawyer-client privilege and that of a public officer's refusal to disclose communications made to him in official confidence when disclosure of the information is against the public interest. Sacramento Newspaper Guild v. Sacramento County Board of Supervisors, 263 Cal. App.2d 41, 69 Cal.Rptr. 480 (1968). We are faced here with the latter situation.
In Times Publishing Co. v. Williams, 222 So.2d 470 (Fla.App.1969) a school board was prohibited from holding secret meetings to discuss personnel questions. The court there observed that the public meetings law was:
"not in and of itself concerned with any rights or privileges of third parties dealing with such agencies. Any rights or privileges these third parties might have must be found elsewhere, and the governmental *86 agencies involved cannot rely on such rights or privileges of third parties to extend their own powers and discretion regarding closed meetings contrary to the clear prohibition of the act."
However, unlike the case in Florida, the Colorado legislature has, for the purpose of facilitating the operation of the child protections teams, specifically designated that the child abuse reports and records be confidential and has made their public disclosure a misdemeanor.
The trial court properly found the Child Protection Team to be subject to the provisions of the Public Meetings Law, since it is a committee ". . . [of] a political subdivision of the state." Board of County Commissioners v. Love, 172 Colo. 121, 470 P.2d 861 (1970); Board of County Commissioners v. Denver, 150 Colo. 198, 372 P.2d 152 (1962). However, since the Child Protection Act makes the contents of reports and records on child abuse cases confidential, such documents are properly within the scope of executive sessions, as authorized by the Public Meetings Law.
The trial court drew a distinction between information which could lead to identification of the child, parents or informant, whether or not found in the reports, and information in the reports which is "nonconfidential." We affirm the court's order prohibiting disclosure of any such "identifying information."
However, it was erroneous to distinguish between confidential and nonconfidential material contained within the reports and records. The confidentiality provision of the Child Protection Act covers the entire contents of a child abuse report and the records related thereto.
Consequently, we hold that the child protection team may, and indeed, to avoid prosecution under § 19-10-115, C.R. S.1973 (1975 Cum.Supp.) must go into executive session for the consideration of child abuse reports and related records.
This construction harmonizes the apparent conflict between the public's interest in open meetings and the need to preserve anonymity to facilitate reporting and treatment of child abuse cases. The intent of the Public Meetings Law is to prevent adoption of resolutions, rules, orders or regulations and final decision-making behind closed doors, but it does not preclude the consideration in executive session of matters properly designated confidential. And, the legislature has determined that child abuse reports fall in the category of these matters to be considered in confidence. Hence, there is no real conflict between the two statutes.
Discussion of matters not contained in reports, and which do not pertain to identifying information, are not appropriate subjects for executive session. There was testimony offered at the hearing pointing out the Team's consideration of questions other than those on specific cases, such as agency availability and responsiveness to reports of child abuse. These issues must be handled in meetings open to the public.

II
The final issue presented is whether intervention by the Attorney General was proper in this case. We find that it was not.
The power and duties of the attorney general are set forth in § 24-31-101(1) (a), C.R.S.1973 (1975 Cum.Supp.). The attorney general is to:
". . . appear for the state and prosecute and defend all actions and proceedings, civil and criminal, in which the state is a party or is interested when required to do so by the governor or the general assembly, and he shall prosecute and defend for the state all causes in the appellate courts in which the state is a party or interested."
The attorney general's argument on the appropriateness of his permissive intervention under C.R.C.P. 24(b)(2) fails to recognize *87 the statutory language directing his appearance for the State of Colorado only "when required to do so by the governor or the general assembly."
"[T]he attorney general does not have powers beyond those granted by the general assembly." People ex rel. Tooley v. District Court, Colo., 549 P.2d 774 (1976); People ex rel. Witcher v. District Court, Colo., 549 P.2d 778 (1976). See also Dunbar v. County Court, 131 Colo. 483, 283 P.2d 182 (1955).
Intervention by the attorney general should have been denied. However, since the intervention had no bearing on the determination of the merits of this case, it was harmless error.
That part of the judgment of the trial court requiring nonconfidential information contained in child abuse reports to be considered in open meetings is reversed. The remainder of the judgment is affirmed and the cause is remanded for orders not inconsistent with this opinion.
PIERCE and RULAND, JJ., concur.