Honorable Henry Wade Criminal District Attorney Condemnation Section Services Building Dallas, Texas 75202
Re: Whether the governing body of the Dallas Area Rapid Transit Authority may meet in executive session to discuss documents excepted from public disclosure by section 3(a)(11) of the Texas Open Records Act
Dear Mr. Wade:
On behalf of the Dallas Area Rapid Transit Authority you request an opinion on the following question:
 Does the Open Meetings Act authorize the DART governing body and/or its official committees to discuss in closed executive sessions written evaluations and recommendations of staff personnel (exempt from disclosure under section 3(a)(11) of the Open Records Act) with regard to the selection of professional consultants and the selection of competitive bidders, and the awarding of contracts to professional consultants and to competitive bidders?
The Dallas Area Rapid Transit Authority is a regional transportation authority established pursuant to article 1118y, V.T.C.S. The authority is a "public body corporate and politic, exercising public and essential governmental functions. . . ." V.T.C.S. art. 1118y, § 10(a). It has power to acquire, hold, and dispose of real and personal property, to acquire, operate and maintain a transportation system, to exercise the right of eminent domain, to issue revenue bonds, and to charge fares to redeem the bonds and pay costs of operating its facilities. Id. §§ 10(d), (e), (g), (j); 15.
The authority acknowledges that meetings of its board of directors are subject to the Open Meetings Act, and we agree. A "meeting" subject to the act consists of any deliberation between a quorum of members of a governmental body at which any public business or public policy over which the governmental body has supervision or control is discussed or considered, or at which any formal action is taken. . . .
V.T.C.S. art. 6252-17, § 1(a). The Dallas Area Rapid Transit Authority is a special district. See Black's Law Dictionary, 5th Ed. (special district is a limited government structure created to accomplish a primarily local improvement); see also Attorney General Opinion H-238 (1974). It is therefore a governmental body within the Open Meetings Act. V.T.C.S. art. 6252-17, § 1(c).
Even a partial listing of the authority's powers evidences its control over important public business and public policy. See, e.g., art. 1118y, §§ 10(a), (d), (e), (g), (j); 15. Its meetings are therefore subject to the Texas Open Meetings Act. Standing subcommittees which deliberate on matters within the authority's jurisdiction are also subject to the act. See Attorney General Opinions H-823 (1976); H-238 (1974); H-3 (1973).
The Open Meetings Act provides in part:
 Except as otherwise provided in this Act or specifically permitted in the Constitution, every regular, special, or called meeting or session of every governmental body shall be open to the public. (Emphasis added).
Sec. 2(a). The underlined language was added in 1973. Acts 1973, 63rd Leg., ch. 31, at 45. In 1972, this office found in the attorney-client relationship the basis for an implied exception to the requirement of open sessions. Attorney General Opinion M-1261 (1972). This exception has been codified as section 2(e) of the Open Meetings Act. Id.
This office has issued opinions considering whether a governmental body may discuss in closed session information made confidential by statutes other than the Open Meetings Act. Attorney General Opinions MW-578 (1982); H-1154 (1978); H-780 (1976); H-484 (1974). See also Gillies v. Schmidt, 556 P.2d 82
(Colo.Ct.App. 1976) (cited in Attorney General Opinion H-1154).
Your question does not raise this issue, since section 3(a)(11) of the Open Records Act does not impose a duty on any governmental body to withhold the records it covers. The Open Records Act provides in part:
Sec. 3. . . .
 (a) All information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business is public information and available to the public during normal business hours of any governmental body, with the following exceptions only:
 (1) information deemed confidential by law, either Constitutional, statutory, or by judicial decision;
. . . .
 (11) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than one in litigation with the agency;
. . . .
 Sec. 14. (a) This Act does not prohibit any governmental body from voluntarily making part or all of its records available to the public, unless expressly prohibited by law; provided that such records shall then be available to any person.
The Open Records Act does not in itself make any information secret or confidential. Open Records Decision Nos. 216 (1978); 177 (1977); 22 (1973). The governmental body may waive exceptions to public disclosure in the Open Records Act by failing to raise them or by refusing to comply with the requirements for requesting an Open Records Decision from the Attorney General's Office. Open Records Decision Nos. 363 (1983); 150 (1977). Certain statutory, common law and constitutional provisions do make particular information confidential and prohibit a governmental body from disclosing it. See Industrial Foundation of the South v. Texas Industrial Accident Board, 540 S.W.2d 668,677, 683 (Tex. 1976), cert. denied, 430 U.S. 931 (1977). Records covered by these provisions are within the exception in section 3(a)(1) for records made confidential by law. 540 S.W.2d at 677. Section 3(a)(11), however, does not impose upon governmental bodies a duty to withhold intra-agency memoranda; it merely permits them to do so. Open Records Decision No. 363 (1983); see also Open Records Decision No. 120 (1976) (student's right of access to his education records prevails over section 3(a)(11) exception).
The Dallas Area Rapid Transit Authority does not violate the Open Records Act when it holds public meetings to deliberate on the choice of consultants and bidders. Attorney General OpinionMW-129 (1979) (discussion of hiring professional consultants must be in open session); see also A A Construction Company, Inc. v. City of Corpus Christi, 527 S.W.2d 833 (Tex.Civ.App.-Corpus Christi 1975, no writ) (bids opened and read at public meeting); Attorney General Opinion MW-254 (1980) (staff analysis of bids presented and discussed in open session of Board of Human Resources).
The brief submitted along with your request letter suggests that a constitutional executive privilege authorizes the Dallas Area Rapid Transit Authority to discuss intra-agency memoranda in executive sessions. The constitutional executive privilege does not, in our opinion, apply to the authority. In United States v. Nixon, 418 U.S. 683 (1974), the United States Supreme Court recognized a constitutionally based privilege protecting from discovery confidential communications between high government officials, in particular the president, and their immediate advisors. It is an open question whether the Texas Constitution provides such a privilege for high executive officers in Texas. A legislatively created special district is, however, subject to discovery proceeding to the same extent as private litigants. See Lowe v. Texas Tech University, 540 S.W.2d 297 (Tex. 1976); Texas Department of Corrections v. Herring, 513 S.W.2d 6 (Tex. 1974).
Section 3(a)(11) of the Open Records Act also has an "executive privilege" aspect, see Open Records Decision No. 308 (1982), but this differs from the constitutionally based executive privilege of United States v. Nixon. Section 3(a)(11) was intended to parallel the similar exception to the federal Freedom of Information Act, found at 5 U.S.C. § 552(b)(5). Attorney General Opinion H-436 (1974); Open Records Decision No. 251 (1980). Section 3(a)(11) and the corresponding federal provision except from disclosure memoranda or letters which could not be obtained through discovery by a private party in litigation with the agency. Open Records Decision No. 251 (1980). Federal cases have identified this privilege against discovery of intra-agency advice as an "executive privilege." This "executive privilege" is an evidentiary privilege based primarily on the common law, although recent federal cases suggest that the constitutional separation of powers doctrine may also support it. See generally, Environmental Protection Agency v. Mink, 410 U.S. 73 (1973). See also Federal Open Market Committee v. Merrill, 443 U.S. 340
(1979); Black v. Sheraton Corp. of America, 371 F. Supp. 97
(D.D.C. 1974); Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,40 F.R.D. 318 (D.D.C. 1966); United States v. Gates, 35 F.R.D. 524
(D.C.Colo. 1964); Kaiser Aluminum and Chemical Corporation v. United States, 157 F. Supp. 939 (U.S.Ct.Cl. 1958); Larkin, Federal Testimonial Privileges, § 5.01 (1984); McCormick, Evidence, § 108 (3d ed. 1984). As incorporated into section 3(a)(11) of the Open Records Act, the executive privilege protects from disclosure opinion, advice, and recommendation of subordinates to superiors. It does not create a testimonial privilege or provide a constitutionally based exception to the Open Meetings Act for the Dallas Area Rapid Transit Authority.
In answer to your question, we conclude that the Dallas Area Rapid Transit Authority is not authorized by section 3(a)(11) of the Open Records Act to discuss in executive session written evaluations and recommendations about the selection of professional consultants and competitive bidders.
 SUMMARY
The Dallas Area Rapid Transit Authority is a governmental body subject to the Open Meetings Act, V.T.C.S. art. 6252-17. It is not authorized by either section 3(a)(11) of the Open Records Act, article 6252-17a, V.T.C.S., or a constitutionally based "executive privilege" to discuss in executive session written evaluations and recommendations about the selection of professional consultants and competitive bidders.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Jack Hightower First Assistant Attorney General
 Mary Keller Executive Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Susan L. Garrison Assistant Attorney General