The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 2, 2023

**2023COA101**

**No. 21CA1608, *Colorado Sun v. Brubaker* — Public Records — Colorado Open Records Act; Children's Code — Dependency and Neglect Records and Information — Reports of Child Abuse or Neglect — Identifying Information**

In this case brought under the Colorado Open Records Act, §§ 24-70-201 to -230, C.R.S. 2023, several media organizations sought records showing the total number of child abuse reports received over a three-year period from certain residential care facilities. The records custodian for the Colorado Department of Human Services (DHS) denied the requests, citing a provision of the Children's Code that prohibits disclosure of child abuse reports as well as "the name and address of any child, family, or informant or any other identifying information contained in such reports." § 19-1-307(1)(a), C.R.S. 2023. According to DHS, disclosure of the requested aggregated information would necessarily reveal the

address of a child or informant contained in a child abuse report because the requests were linked to specific addresses — the addresses of the residential care facilities.

The question on appeal is whether section 19-1-307(1)(a) prohibits, under all circumstances, the disclosure of any address contained in a child abuse report or whether the statute prohibits disclosure of an address only when the address constitutes "identifying information"— that is, information that could lead to the identification of a particular child, family, or informant. After considering the statutory language, the legislative history, and the consequences of adopting either party's construction, the majority concludes that the statute prohibits the disclosure of an address only if it constitutes identifying information. Accordingly, the division reverses the judgment and remands the case to the district court for a determination of whether the address in this case constitutes identifying information.

The dissent concludes that under the plain language of section 19-1-307(1)(a), the address of a child, family, or informant contained in a child abuse report is always confidential and can never be disclosed.

COLORADO COURT OF APPEALS         **2023COA101**

Court of Appeals No. 21CA1608
City and County of Denver District Court No. 21CV31379
Honorable Darryl F. Shockley, Judge

Colorado Sun and Tegna, Inc., d/b/a KUSA-TV/9News,

Plaintiffs-Appellants,

v.

Amanda Brubaker, in her official capacity as the Records Custodian for the
Colorado Department of Human Services,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE HARRIS
Gomez, J., concurs
Pawar, J., dissents

Announced November 2, 2023

Law Office of Steven D. Zansberg, LLC, Steven D. Zansberg, Denver, Colorado,
for Plaintiffs-Appellants

Philip J. Weiser, Attorney General, Ann H. Pogue, Second Assistant Attorney
General, Bianca E. Miyata, Assistant Solicitor General, Denver, Colorado, for
Defendant-Appellee

¶ 1     This case involves a dispute under the Colorado Open Records Act (CORA), §§ 24-70-201 to -230, C.R.S. 2023. Plaintiffs, Colorado Sun and Tegna, Inc., d/b/a KUSA-TV/9News (the media organizations), requested records under CORA from defendant, Amanda Brubaker, the records custodian for the Colorado Department of Human Services (DHS),[1] showing the total number of child abuse reports received over a three-year period from certain residential child care facilities in Colorado. DHS denied the requests, citing a provision of the Colorado Children's Code that prohibits disclosure, subject to statutorily enumerated exceptions, of child abuse reports as well as "the name and address of any child, family, or informant or any other identifying information contained in such reports." § 19-1-307(1)(a), C.R.S. 2023. According to DHS, disclosure of the aggregated information would necessarily reveal the address of a child or informant contained in a child abuse report, as the requests were linked to specific addresses — the address of each residential care facility.

---

[1] For simplicity's sake, we refer to the defendant as the Department of Human Services (DHS), not Amanda Brubaker, as Brubaker was acting on behalf of DHS.

¶ 2     On judicial review of DHS's denial, the district court entered judgment in favor of DHS, and the media organizations appeal.

¶ 3     The question is whether section 19-1-307(1)(a) prohibits, under all circumstances, the disclosure of any address contained in a child abuse report or whether the statute prohibits disclosure of an address only when the address constitutes "identifying information" — that is, information that could lead to the identification of a particular child, family, or informant.

¶ 4     We conclude that the statute is ambiguous. To break the impasse, we turn to the legislative history of section 19-1-307(1)(a) and the possible consequences of adopting either construction. In our view, the evolution of the statutory provision at issue demonstrates that the General Assembly intended to keep confidential only information that could reveal a person's or family's identity, and the possible consequences of adopting either interpretation reinforce this conclusion. We therefore adopt the media organizations' interpretation of the statute.

¶ 5     As a result, we reverse the district court's judgment and remand the case for further proceedings.

## I.    Factual Background[2]

¶ 6    Residential child care facilities (RCCFs) are licensed by DHS to "provide twenty-four-hour group care and treatment" for children, § 26-6-903(29), C.R.S. 2023, most of whom have "serious emotional, behavioral and/or developmental disorders," Off. of Colo.'s Child Prot. Ombudsman (CPO), *Investigation Report: CPO Case ID 2017-2736*, at 3 (Aug. 12, 2019), https://perma.cc/8RSS-RDKE (CPO Report).

¶ 7    In 2017, DHS revoked the license of an RCCF in Pueblo amidst allegations that staff members had abused and neglected the child residents. *Id.* The CPO investigated the circumstances surrounding the facility's closure and issued the CPO Report. The CPO Report documented the total number of child abuse and neglect reports received by the county human services department in the year preceding the closure, as well as the number and percentage of reports "screened out" by the county (i.e., reports that

---

[2] In recounting the background, we, like the district court, accept all factual allegations in the complaint as true and may consider, along with the complaint, any documents attached to it or incorporated by reference. *See Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011).

3

are not assigned to a caseworker for further assessment). *Id.* at 10-11.

¶ 8    In March 2021, while DHS was allegedly scrutinizing its practices, a second RCCF closed. The CPO disclosed the number of complaints received by county human services officials about the RCCF in the preceding year.

¶ 9    Shortly thereafter, the media organizations sent the following requests to DHS for records concerning other RCCFs:

- "[A]ny documents that show how many calls have been made to the child abuse hotline[3] from Mount Saint Vincent (RCCF) and Cleo Wallace (RCCF) from 1/1/2018 to 3/26/2021."

- "The number of hotline calls/abuse and neglect reports/runaways reports from Tennyson Center, Mount St. Vincent, and Cleo Wallace to local child welfare authorities in the last three years, and how many were screened in."

---

[3] Reports of suspected child abuse or neglect may be made directly to the county department of human services or local law enforcement or through the child abuse reporting hotline system. *See* §§ 19-3-307(1), 26-5-111, C.R.S. 2023.

DHS denied the requests "pursuant to CRS 19-1-307(1)(a)." It explained that the responsive records would effectively disclose the address "of the child or informant associated with the hotline calls." Instead, DHS offered to provide the media organizations with the aggregated number of child abuse hotline calls, including the number that were "screened in" (i.e., reports that were referred to a caseworker for further assessment), from all three RCCFs during the relevant period.

¶ 10    The media organizations sued DHS pursuant to section 24-72-204(5), C.R.S. 2023, seeking an order compelling it to produce the requested records. DHS moved to dismiss the complaint on the ground that an address is identifying information that must be kept confidential. The district court granted the motion, concluding that "the Defendant has properly withheld [the requested] information."

## II.    Statutory Background

### A.    CORA

¶ 11    "With the passage of CORA, the General Assembly declared it to be the public policy of Colorado that 'all public records shall be open for inspection by any person, at reasonable times,' except as otherwise provided by law." *Denver Post Corp. v. Ritter*, 255 P.3d

1083, 1089 (Colo. 2011) (quoting § 24-72-201, C.R.S. 2023). "Public records" are "all writings made, maintained, or kept by the state [or] any agency . . . for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds." § 24-72-202(6)(a)(I), C.R.S. 2023.

¶ 12    DHS does not dispute that child abuse reports are "public records." *See* § 19-1-302(1)(a), C.R.S. 2023 ("The general assembly declares that information obtained by public agencies in the course of performing their duties under this title [of the Children's Code] is considered public information under [CORA].").  Still, while the general purpose of CORA is to provide open government through disclosure of public records, its purpose is not to disclose information that falls under an exception in the statute.  *See Mountain-Plains Inv. Corp. v. Parker Jordan Metro. Dist.*, 2013 COA 123, ¶ 35.  In light of the strong presumption in favor of disclosure, exceptions to disclosure are narrowly construed, and the record custodian bears the burden to prove that an exception applies.  *See Shook v. Pitkin Cnty. Bd. of Cnty. Comm'rs*, 2015 COA 84, ¶ 6.

¶ 13    One exception to the rule requiring disclosure is where

"inspection would be contrary to any state statute." § 24-72-

204(1)(a). DHS relied on this exception in denying the media

organizations' requests, contending that section 19-1-307(1)(a)

prohibited disclosure of the requested information.

### B.    Section 19-1-307(1)(a)

¶ 14    Section 19-1-307(1)(a) provides as follows:

> *Identifying information — confidential.* Except
> as otherwise provided in this section and
> section 19-1-303, reports of child abuse or
> neglect and the name and address of any
> child, family, or informant or any other
> identifying information contained in such
> reports shall be confidential and shall not be
> public information.

¶ 15    The earliest iteration of the statute was enacted as part of the

Colorado Child Protection Act of 1975 (the 1975 Act) and broadly

prohibited disclosure of information in child abuse reports:

> *Records confidential.* (1) It is unlawful for any
> person or agency to solicit, encourage
> disclosure of, or disclose the contents of any
> record or report made under this article.

Ch. 177, sec. 1, § 19-10-115, 1975 Colo. Sess. Laws 654.

¶ 16    Shortly after passage of the 1975 Act, a lawsuit by journalists

required a district court to determine whether the strict

confidentiality imposed by the statute ran afoul of Colorado's Public Meetings Law (PML), section 29-9-101, C.R.S. 1975 (repealed 1991). *See Gillies v. Schmidt*, 38 Colo. App. 233, 234-35, 556 P.2d 82, 84 (1976).

¶ 17    The district court determined that the PML and the records statute could be harmonized by distinguishing "between information which could lead to identification of the child, parents or informant" and "information in the reports which is 'nonconfidential.'" *Id.* at 237, 556 P.2d at 86.  Nonconfidential information could be discussed at public meetings, the district court ruled, while "identifying information" could only be discussed in nonpublic executive sessions.  *Id.*

¶ 18    A division of the court of appeals rejected the district court's reasoning.  It concluded that the statute prohibited disclosure of the "*entire* contents" of a child abuse report and, therefore, the distinction between identifying information and nonconfidential information had no statutory basis.  *Id.*

¶ 19    Within a year, the legislature amended the statute.  The new act (the 1977 Act) included an amended legislative declaration (with the amended language marked in capital letters):

> *Legislative declaration.* The general assembly hereby declares that the complete reporting of child abuse is a matter of public concern and that in enacting this article it is the intent of the general assembly to protect the best interests of children of this state and to offer protective services in order to prevent any further harm to a child suffering from abuse. IT IS ALSO THE INTENT OF THE GENERAL ASSEMBLY THAT CHILD PROTECTION TEAMS PUBLICLY DISCUSS PUBLIC AGENCIES' RESPONSES TO CHILD-ABUSE AND NEGLECT REPORTS SO THAT THE PUBLIC AND THE GENERAL ASSEMBLY MAY BE BETTER INFORMED CONCERNING THE OPERATION AND ADMINISTRATION OF THIS ARTICLE.

Ch. 246, sec. 1, § 19-10-102, 1977 Colo. Sess. Laws 1020.

¶ 20    The 1977 Act also included an amended records provision. Section 19-10-115 (the predecessor to section 19-1-307(1)(a)) had previously prohibited disclosure, subject to certain exceptions, of any information in child abuse reports; now it generally prohibited disclosure of "reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports," *id.* at sec. 8, § 19-10-115, 1977 Colo. Sess. Laws at 1023 — the current language of section 19-1-307(a)(1).

¶ 21    The media organizations contend that the district court erred by dismissing their complaint.  They say that section 19-1-307(1)(a) does not prohibit DHS from producing the requested records because they would not reveal "identifying information."

A.    Standard of Review

¶ 22    We review de novo whether the district court properly dismissed a complaint for failure to state a claim.  *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 11.

¶ 23    Questions of statutory interpretation are also subject to de novo review.  *See id.* at ¶ 12.  In interpreting a statute, our primary goal is to ascertain and give effect to the General Assembly's intent.  *See Elder v. Williams*, 2020 CO 88, ¶ 18.  To accomplish this, we look first to the statute's plain language, reading words and phrases in context and construing them according to rules of grammar and common usage.  *Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co.*, 2017 COA 31, ¶ 17.  If the meaning of the statute is clear from the language alone, our analysis is complete, and we apply the statute as written.  *See OXY USA Inc. v. Mesa Cnty. Bd. of Comm'rs*, 2017 CO 104, ¶ 16.  But if the plain language of the

10

statute is "reasonably susceptible of multiple interpretations," then it is ambiguous, *Elder*, ¶ 18.  In that case, we may use other interpretative aids to discern the legislature's intent, including consideration of the legislative history and the title of the statute, as well as "the consequences of a particular construction," *Broomfield Senior Living Owner*, ¶ 17.

### B.    The Language of Section 19-1-307(1)(a)

¶ 24    As noted, the statute prohibits disclosure of "reports of child abuse or neglect," as well as "the name and address of any child, family, or informant or any other identifying information contained in such reports."   § 19-1-307(1)(a).  The parties agree that the statute distinguishes between the "reports of child abuse or neglect" themselves, which are confidential, and certain information contained within "such reports," only some of which is confidential. *See Peck v. McCann*, 43 F.4th 1116, 1125-26 (10th Cir. 2022) (interpreting this provision).  But the parties dispute what information contained in reports of child abuse or neglect is confidential.  The dispute focuses on the meaning of the phrase "the name and address of any child, family, or informant or any other identifying information."

11

¶ 25 As a matter of grammar, this phrase can be understood as a series — "a group of successive coordinate sentence elements joined together," Merriam-Webster Dictionary, https://perma.cc/D8C4-Y69 — consisting of the terms "name," "address," and "any other identifying information."

¶ 26 DHS argues that each term in the series constitutes confidential "identifying information." It says that the phrase "or any other" operates as a "catch all" for additional types of information that are not specifically enumerated. In other words, while "name and address" always qualify as "identifying information," that list is not exhaustive and other terms might also qualify. This is a reasonable reading of the provision. *See, e.g.*, *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218-19 (2008) (statute that precludes lawsuits against "any officer of customs or excise or any other law enforcement officer" precludes a suit against the enumerated officers and every other kind of law enforcement officer, even ones not acting in a customs or excise capacity (quoting 28 U.S.C. § 2680(c))); *Indus. Claim Appeals Off. v. Ray*, 145 P.3d 661, 664 (Colo. 2006) (where "wages" was defined as "board, rent, housing, lodging, or any other similar advantages," the phrase "'or

12

any other similar advantages' provided a flexible means for including employment benefits not otherwise specified in the 'wages' definition" (quoting § 8-47-101(2), C.R.S. 1988)).

¶ 27   But there is another reasonable reading of the provision. Under the media organizations' construction, only addresses that constitute "identifying information" are confidential. The legislature's choice to use the conjunctive "and" to connect "name and address" rather than the disjunctive "or" may signal that it did not intend for any address on its own to be confidential, but only addresses that are also disclosed with associated names. *See West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006) ("Use of the word 'or' in a statute is presumed to be disjunctive.").

¶ 28   And the phrase "or any other identifying information," even if a "catchall" of sorts, may limit and modify the other enumerated terms — here, "name and address." Various courts, including our supreme court, have endorsed this rule of syntax. *See United States v. Williams-Davis*, 90 F.3d 490, 508 (D.C. Cir. 1996); *Mortg. Brokerage Co. v. Mills*, 100 Colo. 267, 269, 67 P.2d 68, 69 (1937). Under the rule, which the *Williams-Davis* court described as a "sort

13

of reverse ejusdem generis,"[4] the general catchall term, "or any other," "reflects back on the more specific rather than the other way around." *Id.* at 509. So, "the phrase 'A, B, or any other C' indicates that A is a subset of C." *Id.*

¶ 29    At issue in *Williams-Davis* was a statute that defines when a person is engaged in a continuing criminal enterprise. *Id.* at 508. To fall under the statute, the person must, among other things, act "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management." *Id.* (emphasis omitted) (quoting 21 U.S.C. § 848(c)). The court concluded (as the Ninth Circuit had previously) that the phrase "any other position of management" limited the preceding enumerated terms such that an

---

[4] "The doctrine of ejusdem generis provides that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *Mounkes v. Indus. Claim Appeals Off.*, 251 P.3d 485, 488 (Colo. App. 2010) (where statute allowed for disqualification of benefits based on the "intentional falsification of expense accounts, inventories, or other records or reports," "other records and reports" had to be interpreted to comprise records and reports of the same type as expense accounts and inventories (quoting § 8-73-108(5)(e)(VII), C.R.S. 2023))).

"organizer" "must exercise some sort of managerial responsibility." *Id.*

¶ 30    Our supreme court used this same rule of syntax to interpret an "or any other" phrase in *Mortgage Brokerage Co.*, 100 Colo. 267, 67 P.2d 68.  In that case, an employee was required by the terms of a bond to reimburse his employer for losses caused by the employee "through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication, or any other act of fraud or dishonesty."  *Id.* at 268, 67 P.2d at 68.  The court interpreted the phrase "or any other act of fraud or dishonesty" to modify or limit the enumerated terms.  Thus, while the employee might have committed "wrongful abstraction" or "willful misapplication," he could not be liable unless he acted fraudulently or dishonestly, as "it [was] clear that [those terms] were to be construed to indicate or denote acts of fraud or dishonesty."  *Id.* at 269, 67 P.2d at 69; *see also Jackson v. Commonwealth*, 652 S.E.2d 111, 112-13 (Va. 2007) (statute prohibiting, in relevant part, driving while "under the influence of any narcotic drug or any other self-administered intoxicant or drug" did not proscribe driving under the

15

influence of a narcotic drug that was not self-administered (quoting Va. Code Ann. § 18.2-266 (West 2023))).

¶ 31    Thus, using this rule of syntax, the phrase "any other identifying information" can be read as modifying or limiting the enumerated terms "name" and "address," such that disclosure of an address is prohibited only when it constitutes "identifying information."

¶ 32    Accordingly, we conclude that the statute is ambiguous, so we turn to other interpretive aids to ascertain the legislature's intent.

### C.    The Legislative History of Section 19-1-307(1)(a) and the Consequences of Adopting Either Construction

¶ 33    As we have explained, the initial iteration of the statute prohibited disclosure of the entire contents of a child abuse report. But after *Gillies*, the legislature amended the statute.  The amendment indicates the "legislature's desire to *narrow* the statute to cover only the reports themselves and identifying information therein."  *Peck*, 43 F.4th at 1126.

¶ 34    More specifically, the amended statutory language tracked the distinction the district court drew in *Gillies* between confidential "identifying" information and nonconfidential information.  *See* 38

16

Colo. App. at 235-36, 556 P.2d at 85.  In our view, by tracking that distinction, the legislature likely intended to also adopt the district court's dividing line: confidential information is "any information which would identify the child, parents or informant," and all other information is nonconfidential.  *Id.* at 236, 556 P.2d at 85.

¶ 35    And in 1996 the legislature amended the title of the provision — from "Confidentiality of records" in the 1977 Act to "Identifying information — confidential."  Ch. 230, sec. 6, § 19-1-307(1)(a), 1996 Colo. Sess. Law 1166.  This amendment underscores the legislature's focus on maintaining confidentiality of identifying information only.

¶ 36    In light of this history, reading the statute to make any "address of any child, family, or informant" confidential — regardless of whether disclosure of the address would, in fact, reveal the identity of a specific child, family, or informant — makes less sense than construing the language in accordance with the district court's reasoning in *Gillies*.

¶ 37    An examination of the possible consequences of adopting one interpretation over the other further suggests that the media organizations' interpretation more accurately reflects the General

17

Assembly's intent. *See* § 2-4-203(1)(e), C.R.S. 2023 (noting that in construing an ambiguous statute, we may consider "[t]he consequences of a particular construction").

¶ 38    DHS's construction would require that some *non*identifying information is kept confidential, a result we cannot square with the legislative history or even with other sections of the Children's Code, which themselves authorize the public disclosure of information from child abuse reports, so long as the information does not "identify individuals." *Peck*, 43 F.4th at 1136.  Indeed, DHS's interpretation would prohibit the disclosure of the information in the CPO Report and potentially subject the CPO to prosecution.  *See* § 19-1-307(1)(c) (violation of section 19-1-307(1)(a) is a petty offense, punishable by a fine).

¶ 39    DHS's construction may also raise difficult constitutional problems.  In *Peck*, the question presented was whether section 19-1-307(1)(c) and (4), which penalize the disclosure of information from child abuse records and reports, violate the First Amendment. *See Peck*, 43 F.4th at 1121-22.  Because section 19-1-307(1)(c) punishes disclosures listed in subsection (1)(a) of that statute, the Tenth Circuit first determined that subsection (1)(a) "reach[es] only

identifying disclosures," meaning that subsection (1)(c) does not "inhibit . . . disclos[ure] [of] non-identifying information." *Id.* at 1126. The plaintiff did not seek to disclose identifying information, however, so the court declined to reach the issue of subsection (1)(c)'s constitutionality. *Id.* But subsection (4) penalizes the disclosure of *any* data or information in a child abuse record or report, including nonidentifying information. *Id.* at 1127. The court concluded that subsection is unconstitutional because it is not narrowly tailored to the government's compelling interest in protecting children, as the government could achieve that purpose by proscribing the disclosure only of identifying information. *Id.* at 1135-37.

¶ 40 This reasoning suggests DHS's interpretation — which could prohibit the disclosure even of some nonidentifying information (that is, information that would not identify a particular child, family, or informant) — could be an unconstitutional restriction on free speech. By contrast, adopting the media organizations' interpretation avoids this possible constitutional infirmity. *See People v. Iannicelli*, 2019 CO 80, ¶ 22 (noting that "statutory terms should be construed in a manner that avoids constitutional

infirmities" (quoting *People v. Zapotocky*, 869 P.2d 1234, 1240 (Colo. 1994))).

¶ 41     In sum, we conclude that the legislature intended to prohibit disclosure of only information that would identify a particular child, family, or informant associated with a child abuse or neglect report.

¶ 42     Like the Tenth Circuit, we acknowledge that "separating identifying information from non-identifying information w[ill] often be a difficult task." *Peck*, 43 F.4th at 1135.  But as the *Peck* court pointed out, "[i]f Child Protection Teams" — and, we would add, the CPO — "are capable of distinguishing between identifying and non-identifying information, then so too" are others at DHS.  *Id.* at 1136.

¶ 43     Finally, we note that the only CORA exception presented in this appeal was section 19-1-307(1)(a).  We express no opinion on whether other exceptions might give DHS discretion to withhold records otherwise disclosable under section 19-1-307(1)(a), particularly in a close case.

IV.   Disposition

¶ 44     The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.  On remand, the district court must determine whether, in light of our opinion, the

requested records would disclose "identifying information" of a child, family, or informant associated with a child abuse or neglect report.

JUDGE GOMEZ concurs.

JUDGE PAWAR dissents.

JUDGE PAWAR, dissenting.

¶ 45　According to the majority, section 19-1-307(1)(a), C.R.S. 2023, is ambiguous because there are two reasonable ways to read it. I think there is only one. In my view, the only reasonable reading is that names and addresses in child abuse reports are always confidential and protected from disclosure. I would therefore affirm the district court's ruling based on the plain language of the statute without resorting to additional aids of statutory interpretation.

¶ 46　As the majority explains, our primary goal when interpreting statutes is to ascertain and give effect to the General Assembly's intent. *See Elder v. Williams*, 2020 CO 88, ¶ 18. We do this by first examining the language of the statute. *Id.* We give the words and phrases the General Assembly chose their plain and ordinary meanings. *Id.* And we read those words and phrases in the context of the entire statutory scheme, giving "consistent, harmonious, and sensible effect to all of its parts." *Id.*

¶ 47　We look beyond the plain language of the statute only if that language is ambiguous — that is, only if the language is susceptible of multiple reasonable interpretations. *Id.* An alternate

22

interpretation is unreasonable and therefore creates no ambiguity if it "would lead to illogical or absurd results." *Id.*

¶ 48   Section 19-1-307(1)(a) protects from disclosure child abuse reports and "the name and address of any child, family, or informant or any other identifying information contained in such reports." The majority concludes that it is reasonable to read this language in two different ways to determine the rule for disclosing names or addresses in child abuse reports. First, the statute can be read to *always* protect names or addresses in child abuse reports from disclosure. Second, the majority employs a "sort of reverse ejusdem" rule of syntax, *United States v. Williams-Davis*, 90 F.3d 490, 509 (D.C. Cir. 1996), to read the statute as protecting names or addresses from disclosure *only if they constitute identifying information.*

¶ 49   Even accepting the second interpretation as grammatically reasonable, I conclude it is unreasonable in substance. The suggestion that the General Assembly intended to protect the names and addresses of children in child abuse reports only in certain circumstances is absurd and illogical. The majority's alternate interpretation would mean that a child abuse victim's (or

23

the family's or informant's) name or address would be subject to disclosure unless the records custodian, or a court, determines that such information is identifying. This is unreasonable. The only reasonable interpretation is that the names and addresses of children, families, or informants in child abuse reports are always confidential, as is any additional information that is identifying.[5]

¶ 50    The media organizations seek information linking reports of child abuse to particular addresses. This is information that is always protected under the only reasonable interpretation of section 19-1-307(1)(a). I respectfully dissent from the majority's contrary conclusion and would affirm the district court's order.

---

[5] Because I conclude that names and addresses of children, families, and informants in child abuse reports are always identifying information for purposes of section 19-1-307(1)(a), C.R.S. 2023, I need not address the majority's constitutional concerns about names and addresses that might not be identifying.